RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION:  2003 FED App. 0219A (6th Cir.)
File Name:  03a0219a.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.                                          No. 01-6374

DWIGHT L. BURTON,
*Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Tennessee at Jackson.
No. 01-10012—James D. Todd, Chief District Judge.

Argued:  May 7, 2003

Decided and Filed:  July 2, 2003

Before:  KRUPANSKY, SILER, and GILMAN, Circuit
Judges.

_____

**COUNSEL**

**ARGUED:**  Doris A. Randle-Holt, OFFICE OF THE
FEDERAL PUBLIC DEFENDER FOR THE WESTERN
DISTRICT OF TENNESSEE, Memphis, Tennessee, for
Appellant.  Victor L. Ivy, ASSISTANT UNITED STATES
ATTORNEY, Jackson, Tennessee, for Appellee.
**ON BRIEF:**  M. Dianne Smothers, OFFICE OF THE
FEDERAL PUBLIC DEFENDER FOR THE WESTERN

DISTRICT OF TENNESSEE, Memphis, Tennessee, for
Appellant.  Christopher E. Cotton, ASSISTANT UNITED
STATES ATTORNEY, Memphis, Tennessee, for Appellee.

_____

**AMENDED OPINION**

_____

RONALD LEE GILMAN, Circuit Judge.  A federal grand
jury indicted Dwight L. Burton for possessing five grams or
more of cocaine base with the intent to distribute, and for
possessing a firearm both as a felon and in furtherance of drug
trafficking.  After the district court denied his motion to
suppress the evidence obtained during a December 8, 2000
search of his person and automobile, Burton conditionally
pled guilty to all but the charge of being a felon in possession
of a firearm.  The district court then sentenced him to 120
months of imprisonment, followed by 4 years of supervised
release. Burton appeals, challenging the district court's denial
of his motion to suppress.  For the reasons set forth below, we
**AFFIRM** the judgment of the district court.

## I.  BACKGROUND

### A.  Factual background

Officer Gary Davidson was on patrol in Henderson,
Tennessee on December 8, 2000, when Assistant Police Chief
Dennis Haltom told him that the department had received
information that two black men were selling narcotics on
Baughn Street.  Although Assistant Chief Haltom had
received this information from a reliable confidential
informant, Officer Davidson was not aware of the source at
the time. Indeed, he surmised that the information was based
upon an anonymous tip.  Officer Davidson did know,
however, that Baughn Street was a high-crime area.

At approximately 11:30 p.m. that evening, Officer
Davidson arrived at Baughn Street.  He circled around a
parking lot and noticed an automobile turn onto the street.

The automobile came to a stop approximately ten feet from a "no parking" sign. Two black men got into the back seat. The automobile did not depart. After waiting a few seconds, Officer Davidson proceeded toward the stopped automobile in his police cruiser, driving up immediately behind it. Several more seconds passed with no movement by either vehicle, at which point Officer Davidson turned on his cruiser's police lights.

Officer Davidson then exited his cruiser and approached the automobile. He asked the driver, who was later identified as Burton, to produce his driver's license. Burton supplied his license as requested. According to Davidson, he then asked Burton to step out of the automobile. After Burton complied, Officer Davidson asked him several questions, including whether he owned the automobile and whether there was anything illegal inside.

Burton was then asked if he would consent to a search of the automobile. He agreed to do so. Burton was in fact in the process of signing a consent-to-search form when Assistant Chief Haltom arrived on the scene.

Burton then acceded to Officer Davidson's request that he put his hands on his head and be patted down for safety purposes. Immediately before beginning the pat down, Officer Davidson asked Burton: "Is there anything on you I need to know about, such as needles or anything in this nature?" Burton responded by admitting that he was carrying marijuana in his pants pocket. Officer Davidson retrieved the bag of marijuana and asked Burton: "Dwight, do you have anything else?" Burton replied that he had more narcotics in his shirt pocket. Officer Davidson thereupon extracted a snuff box containing crack cocaine from Burton's shirt pocket. After completing the pat-down, Officer Davidson placed Burton under arrest for drug possession. During the ensuing search of the automobile, a firearm was discovered.

**B.  Procedural background**

The grand jury returned a three-count indictment against Burton. Count One charged him with violating 21 U.S.C. § 841 by possessing five grams or more of cocaine base with the intent to distribute. The second and third counts charged Burton with violations of 18 U.S.C. §§ 924 and 922 for possessing a firearm in furtherance of drug trafficking and while a felon, respectively. Burton filed a motion to suppress the evidence obtained by Officer Davidson during the incident on Baughn Street. After conducting a hearing on this issue, the district court denied the motion. Burton then conditionally pled guilty to Counts One and Two, with the government dismissing Count Three. The district court subsequently sentenced him to 120 months of imprisonment, followed by 4 years of supervised release. This timely appeal followed.

## II.  ANALYSIS

"A district court's denial of a motion to suppress evidence is reviewed under a hybrid standard. Its findings of fact are reviewed under the 'clearly erroneous' standard, but its conclusions of law are reviewed de novo." *United States v. Orlando*, 281 F.3d 586, 593 (6th Cir.), *cert. denied*, 123 S. Ct. 411 (2002).

Burton argues that Officer Davidson's initial stop of the automobile was unlawful. The Fourth Amendment, however, permits an officer who has probable cause to believe that a traffic violation is occurring to detain the automobile, regardless of the officer's subjective motivation for the stop. *Whren v. United States*, 517 U.S. 806, 812-13 (1996). In this case, Officer Davidson observed the automobile that Burton was driving parked near a no-parking sign. Burton claims that he was not violating any traffic law because he was not technically "parked" within the meaning of Henderson's municipal parking ordinance.

We find this argument unpersuasive for two reasons. First, Burton failed to raise it in the district court. This court has

held that "a defendant who fails to raise a specific issue as the basis for suppression has waived the right to raise that issue on appeal." *United States v. Critton*, 43 F.3d 1089, 1093 (6th Cir. 1995) (internal quotation marks omitted). Indeed, in his motion to suppress, Burton himself referred to the incident in question as "an ordinary traffic stop [in this instance a parking violation] . . . ." (Brackets in original.) He also acknowledged that "[i]n the present case," a police officer saw "a vehicle which appeared to be parked in a 'no parking' area."

Second, the traffic laws of both Henderson and the state of Tennessee fail to support Burton's argument. Burton cites § 15-601 of the Henderson traffic code for the proposition that an automobile must be left unattended to be considered parked. But § 15-601 provides no such definition. Rather, it sets forth an independent rule that "[n]o person shall leave any motor vehicle unattended on any street without first setting the brakes thereon . . . ." More on point is the state statute that defines parking as "the standing of a vehicle, whether occupied or not, otherwise than temporarily for the purpose of and while actually engaged in loading or unloading." Tenn. Code Ann. § 55-8-101(38). Both Henderson and the state of Tennessee ban parking where a sign prohibits it. Henderson, Tn. Ordinances ch. 6, § 15-604 ("No person shall park a vehicle in violation of any sign placed or erected by the state or city . . . ."); Tenn. Code Ann. § 55-8-160(a)(14) (forbidding stopping, standing, or parking "[a]t any place where official signs prohibit stopping"). Because he observed the automobile driven by Burton stopped near a no-parking sign while not actually engaged in loading or unloading, Officer Davidson had probable cause to believe that Burton was violating local and state traffic laws.

Burton argues alternatively that even if the initial stop was justified, its scope exceeded that which is constitutionally permissible. He relies on *United States v. Mesa*, 62 F.3d 159 (6th Cir. 1995), where this court stated: "Once the purposes of the initial traffic stop were completed, there is no doubt that the officer could not further detain the vehicle or its

occupants unless something that occurred during the traffic stop generated the necessary reasonable suspicion to justify a further detention." *Id.* at 162. Burton contends that "Davidson admitted that once he gave Mr. Burton's license back to him, he could have simply given him a citation for parking in a no-parking zone." Any further detention, Burton argues, was unlawful absent reasonable suspicion that other criminal activity was afoot.

The *Mesa* court's statement, however, no longer accurately represents the law. In *Ohio v. Robinette*, 519 U.S. 33 (1996), the Supreme Court considered whether a motorist's Fourth Amendment rights were violated where, after initially being stopped for a traffic violation, the motorist was ordered out of his automobile by the police officer and asked if he would consent to a search of the vehicle for illegal contraband. *Id.* at 35-36. Because the officer's question had exceeded the scope of the traffic stop's initial purpose, the Ohio Supreme Court had ruled that the consent subsequently obtained was invalid. The Supreme Court reversed, holding that the Fourth Amendment required only that the detention and question be reasonable under the particular facts of the case. *Id.* at 39. Following *Robinette*, this court in *United States v. Guimond*, 116 F.3d 166 (6th Cir. 1997), read *Mesa* to apply on its facts—where the motorist's consent was obtained only after she had been detained in a locked police cruiser for a considerable period of time after the initial stop—rather than as setting forth an inflexible rule. *Id.* at 171 (quoting the statement of the *Mesa* court and then explaining that "we read that passage as applying to the facts of that case, not as holding that consent is per se invalid in all cases where it is obtained after the conclusion of legitimate detention").

We recognize that the more recent case of *United States v. Smith*, 263 F.3d 571 (6th Cir. 2001), may have created some confusion in this regard. In *Smith*, this court upheld the suppression of evidence obtained during the search of an automobile where the officer had completed the traffic stop and had no reasonable suspicion that other criminal activity was afoot, yet detained the motorist until a "drug dog" could

inspect the automobile. The court stated: "Although *Guimond* did limit *Mesa* to its facts, it did so only with respect to the issue of the validity of consent to search which is obtained after the conclusion of an initial detention. *Guimond* did not affect *Mesa* with respect to the issue of reasonable suspicion." *Id.* at 589 n.5 (citation omitted).

The crucial difference between the facts of *Smith* and those of *Guimond* or the present case is that the police officer in *Smith* searched the stopped automobile without the motorist's consent. This fact also distinguishes the instant case from the decision by the Supreme Court in *Knowles v. Iowa*, 525 U.S. 113 (1998), which held that the Fourth Amendment did not permit an officer to stop a motorist for a traffic violation, issue a citation, and then search the automobile (without the motorist's consent) pursuant to a state statute that authorized searches incident to citations. In contrast, Officer Davidson sought and obtained Burton's consent to a search of the automobile. More recent Supreme Court precedent, to which we turn below, makes the continuing vitality of this distinction questionable. *See* Thomas Y. Davies, *The Fictional Character of Law-and-Order Originalism: A Case Study of the Distortions and Evasions of Framing-Era Arrest Doctrine in* Atwater v. Lago Vista, 37 Wake Forest L. Rev. 239, 270 n.89 (2002) ("[T]he combination of *Atwater* and *Whren* appear to effectively negate the Court's ruling in *Knowles v. Iowa* . . . ."). But we have no need to examine that question in this case because Burton did in fact agree to the search of the automobile. *Robinette* therefore provides the appropriate framework for analyzing the facts here.

This leaves us to ascertain whether asking Burton if he would consent to a search of the automobile was a reasonable request under the circumstances. Recent Supreme Court precedent suggests that this inquiry was reasonable. In *Atwater v. City of Lago Vista*, 532 U.S. 318 (2001), the Court held that the Fourth Amendment permits a police officer to effect a custodial arrest of someone for a misdemeanor parking violation, even though the offense is not one that permits the violator's arrest under state law. *Id.* at 354. Applying *Atwater* to the context of a motorist being asked

more questions by a police officer than are necessary to issue a traffic citation, the Seventh Circuit has opined:

Questions that hold potential for detecting crime, yet create little or no inconvenience, do not turn reasonable detention into unreasonable detention. They do not signal or facilitate oppressive police tactics that may burden the public—for all suspects (even the guilty ones) may protect themselves fully by declining to answer. Nor do the questions forcibly invade any privacy interest or extract information without the suspects' consent.

*United States v. Childs*, 277 F.3d 947, 954 (7th Cir.) (en banc), *cert. denied*, 123 S. Ct. 126 (2002).

In this case, after Burton gave Officer Davidson a valid driver's license, he was asked only a handful of questions, including whether he would consent to a search of the automobile. The record provides no reason to suspect either that these questions were unusually intrusive or that asking them made this traffic stop any more coercive than a typical traffic stop. *Robinette*, 519 U.S. at 39 (holding that asking a detained motorist whether he would consent to a search of his automobile for contraband, even after he had produced a valid driver's license, did not necessarily make the traffic stop unreasonable in scope or duration); *United States v. Erwin*, 155 F.3d 818, 822-23 (6th Cir. 1998) (en banc) (holding that, where police officers had stopped a vehicle because they suspected that the motorist was intoxicated, "irrespective of whether the deputies were justified in detaining [the motorist] after he showed no signs of intoxication, and even if they had not, after approaching [the motorist], observed conditions raising a reasonable and articulable suspicion that criminal activity was 'afoot,' they were entitled to ask [the motorist] for permission to search his vehicle"); *Childs*, 277 F.3d at 954 (upholding the lawfulness of a search, the consent for which was obtained by asking a motorist three questions unrelated to the purpose of the traffic stop).

Particularly where, as here, the traffic stop took place on a street known to the police as a high-crime area, we believe

that asking a few questions about illegal activity to the driver of an automobile stopped for a traffic violation at 11:30 p.m. is not unreasonable. *See Illinois v. Wardlaw*, 528 U.S. 119, 124 (2000) ("[O]fficers are not required to ignore the relevant characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation."). We therefore conclude that the scope and duration of the traffic stop in this case was reasonable, which validates Burton's consent to search the automobile.

Neither Burton's motion in the district court nor his brief on appeal are clear as to whether he also seeks to suppress the evidence of the marijuana and cocaine base that was on his person. The district court, however, addressed this issue and concluded that there was no reason to suppress the evidence. We agree. In *Pennsylvania v. Mimms*, 434 U.S. 106 (1977), the Supreme Court held "that once a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures." *Id.* at 111 n.6. Officer Davidson did just that, and then asked Burton: "Is there anything on you I need to know about, such as needles or anything in this nature?" This question was reasonably related to the officer's safety. In response, Burton voluntarily admitted that he was carrying narcotics on his person.

This admission undoubtedly gave Officer Davidson probable cause to search and arrest Burton. *See United States v. Harris*, 403 U.S. 573, 583 (1971) ("Admissions of crime, like admissions against proprietary interests, carry their own indicia of credibility—sufficient at least to support a finding of probable cause to search."); *United States v. Torres-Guevara*, 147 F.3d 1261, 1266 (10th Cir. 1998) (concluding that where the defendant's "encounter with the officers was consensual at the time she admitted carrying drugs[,] . . . this admission provided probable cause for her arrest"); *United States v. Brady*, 819 F.2d 884, 889 (9th Cir. 1987) ("After [the defendant] said he had a gun in the trunk, [the officer] had probable cause to think that [the defendant] was violating

[the California law that] prohibits carrying a concealed firearm in a vehicle without a permit. . . . [The officer] could search [the defendant's] car and containers within it that might conceal a firearm."); *United States v. Davis*, No. 97-5400, 1998 WL 786904, at *3-*4 (6th Cir. Oct. 27, 1998) (upholding the search and arrest of a person who, when asked by police officers whether she was carrying drugs, replied "I guess you are going to find out sooner or later.").

### III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.