*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0328P (6th Cir.)
File Name: 03a0328p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

UNITED STATES OF AMERICA,
 *Plaintiff-Appellant,*

 *v.*   No. 02-5143

TERRY LAMONT HERBIN,
 *Defendant-Appellee.*

Appeal from the United States District Court
for the Eastern District of Tennessee at Greeneville.
No. 01-00071—Thomas G. Hull, District Judge.

Submitted: August 1, 2003

Decided and Filed: September 15, 2003

Before: DAUGHTREY, MOORE, and SUTTON, Circuit
Judges.

───────────────

### COUNSEL

**ON BRIEF:** Dan R. Smith, ASSISTANT UNITED STATES
ATTORNEY, Johnson City, Tennessee, for Appellant.
William L. Ricker, RICKER LAW OFFICE, Greeneville,
Tennessee, for Appellee.

───────────────

2  *United States v. Herbin*  No. 02-5143

───────────────

### OPINION

───────────────

 SUTTON, Circuit Judge. A federal grand jury indicted
Terry Lamont Herbin for violating 18 U.S.C. § 922(g), which
prohibits convicted felons from possessing firearms, after the
police seized a .38 caliber handgun from the car in which
Herbin was a passenger. Herbin moved to suppress the
firearm, arguing that narcotics officers violated the Fourth
Amendment when they used traffic violations as a pretext to
stop the car. The District Court granted the motion and
suppressed the weapon. We REVERSE.

### I.

 On July 3, 2001, several narcotics agents, driving unmarked
cars, tailed two vehicles in Johnson City, Tennessee. The
first car was driven by Lisa Thompson, and included Herbin
in the passenger seat. The second car was driven by Herbin's
brother. In tailing the vehicles, the agents admitted that their
primary mission was to pursue a drug-trafficking
investigation, not to enforce the traffic laws. The agents
acknowledged that they had information that Terry Herbin
was in the area for the purpose of distributing narcotics.

 The two drivers – Ms. Thompson and Herbin's brother –
soon gave the agents another explanation for stopping the
cars. The agents observed both cars run a red light and, later,
saw Thompson's car cross the center line twice. When the
two cars eventually pulled into a parking lot, the agents
activated their lights and initiated a traffic stop.

 As the agents approached the cars, Herbin's brother exited
the second car as if to flee. The agents drew their weapons
and ordered him to stop. One of the agents then reached into
Lisa Thompson's car through the window and removed the
key from the ignition. The officers asked Ms. Thompson and

Terry Herbin to exit the car in which they were riding and to remain at the scene.

Although Agent Thompson testified that he stopped the vehicles to issue a citation and to determine whether Ms. Thompson was intoxicated (because she had crossed the center line), the agents never pursued the traffic violations. They did not ask for drivers' licenses, "run the tags" on the vehicles, perform any field sobriety tests, or issue any tickets. What they did do once they had obtained order over the area was to ask Ms. Thompson for permission to search her car for contraband. Ms. Thompson consented, and the search revealed a loaded .38 caliber handgun beneath the passenger seat in which Herbin had been sitting.

Presumably on the basis of this evidence, a grand jury indicted Herbin for violating 18 U.S.C. § 922(g), which prohibits convicted felons from possessing firearms. Herbin moved to suppress the weapon. A magistrate judge recommended denying the motion because (1) the stop was supported by probable cause that traffic violations had occurred and (2) the driver had consented to the subsequent search of her vehicle.

The District Court disagreed. In its view, "the initial traffic stop in this case was a pretext, [ ] the subsequent detention of the defendant and the officers' actions were not related to the circumstances justifying the initial stop, and [ ] the search incident to that stop was in violation of the defendant's Fourth Amendment rights." The Government appealed.

II.

We review the District Court's legal conclusions *de novo*, *United States v. Bailey*, 302 F.3d 652, 656 (6th Cir. 2002), and, finding them erroneous, need not question its factual findings.

This case does not mark a new path. In *Whren v. United States*, 517 U.S. 806, 812–13 (1996), the Supreme Court held that the legality of a traffic stop turns on the validity of the officers' objective explanation for making the stop, not on the subjective intentions of the officers in initiating the stop. A traffic stop supported by probable cause, *Whren* makes clear, may not be invalidated under the Fourth (and Fourteenth) Amendment on the ground that the officers stopped the car for "pretextual" reasons – which is to say, acted upon a violation of one set of laws (*e.g.*, run-of-the-mill traffic laws) in order subjectively to enforce another set of laws (*e.g.*, drug-trafficking laws). In the words of *Whren*: "Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." *Id.* at 813. *See also Arkansas v. Sullivan*, 532 U.S. 769, 771–72 (2001) (per curiam) (holding that a custodial arrest for a traffic violation and search incident to arrest do not violate the Fourth Amendment just because the officer had an improper subjective motivation for making the stop).

Both before and after *Whren*, this Court has adhered to this principle. In *United States v. Bailey*, 302 F.3d 652 (6th Cir. 2002), in rejecting a similar argument, the Court held that two officers had lawfully stopped a motorist whom they had witnessed driving down the wrong side of the road. That the officers were allegedly "making traffic stops" as a "pretext" to investigate complaints of drug activity was "irrelevant," we emphasized, because the officers "had probable cause to stop [the motorist] for a traffic violation." *Id.* at 656–57. Nor did we stray from this path in *United States v. Burton*, 334 F.3d 514 (6th Cir. 2003), in holding that the Fourth Amendment permitted a police officer to stop a car that he observed parked in a no-parking area, regardless of the officer's subjective motivation for the stop. *Id.* at 516–17. *See also United States v. Hill*, 195 F.3d 258, 264 (6th Cir. 1999) ("an officer may stop a vehicle for a traffic violation when his true motivation is to search for contraband, as long as the officer had probable cause to initially stop the vehicle"); *United States v. Ferguson*, 8 F.3d 385, 391 (6th Cir. 1993) (en banc).

Measured by these precedents, the District Court's decision cannot stand. Under *Whren* and this Court's cases, the District Court's finding that the initial traffic stop was "a pretext" is legally beside the point. No one disputes that the agents had probable cause to stop Ms. Thompson's car when it ran a red light and twice crossed the center line. Accordingly, the agents had an objectively justifiable basis for stopping the car.

Nor do the officers' subjective intentions become relevant in assessing the agents' conduct *after* the initial stop. Herbin contends that the agents ran afoul of the Fourth Amendment when, without any intention of pursuing the traffic violations, the agents drew their guns on the vehicle occupants, seized the key to Lisa Thompson's car, and requested her consent to search it. The Supreme Court's decision in *Ohio v. Robinette*, 519 U.S. 33 (1996), however, forecloses this argument. It makes clear that continuing to detain a motorist does not become unlawful just because the officer has determined in his own mind not to pursue the traffic violation. *Id.* at 38. From beginning to end, the constitutionality of a traffic stop under the Fourth Amendment depends on the objectively reasonable justifications for the officers' actions, not their subjective intentions.

Here, the circumstances of the stop and detention were within legal limits. Before the agents even had an opportunity to pursue the traffic violations, Herbin's brother exited the second car as if to flee. Already suspecting Terry Herbin of criminal activity, the agents responded with appropriate caution: They did not ask for drivers' licenses, run the tags, attempt to perform a field sobriety test, or issue a ticket. They instead drew their weapons, seized the occupants, and removed the key from the ignition of Ms. Thompson's car. The agents already had authority to seize, at least temporarily, the vehicles and their occupants based on probable cause to believe traffic laws had been violated. *See Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) (the Fourth Amendment does not prohibit an officer from making

a custodial arrest for a misdemeanor traffic violation even though it is not an arrestable offense under state law); *Pennsylvania v. Mimms*, 434 U.S. 106, 111 n.6 (1977) ("once a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures"). On this record, we find no illegality in the officers' actions, particularly in light of the sudden movements of Herbin's brother and the violations of the traffic laws that had already occurred.

Lastly, once the scene was under control, there was nothing unreasonable about asking Ms. Thompson for permission to search her car. *See Robinette*, 519 U.S. at 39-40 (holding that an officer need not advise a detained motorist that he or she is free to go before asking whether the motorist would consent to a search for contraband); *United State v. Erwin*, 155 F.3d 818, 822–23 (6th Cir. 1998) (en banc) ("irrespective of whether the deputies were justified in detaining [the motorist] after he showed no signs of intoxication, and even if they had not, after approaching [him], observed conditions raising a reasonable and articulable suspicion that criminal activity was 'afoot,' they were entitled to ask [the motorist] for permission to search his vehicle"). As this Court recently explained in *United States v. Burton*, 334 F.3d 514 (6th Cir. 2003), a case involving a similar traffic stop, "'[q]uestions that hold potential for detecting crime, yet create little or no inconvenience, do not turn reasonable detention into unreasonable detention.'" *Id.* at 518 (quoting *United States v. Childs*, 277 F.3d 947, 954 (7th Cir. 2002) (en banc)). Had Ms. Thompson declined to answer questions and had there been no reasonable suspicion to detain her and the Herbin brothers for something other than traffic violations, the agents would have been required to "pursue" the traffic violations or let the vehicles and occupants go. Instead, she voluntarily consented, a fact that Terry Herbin does not dispute.

Because we conclude that the seizure was the product of a lawful traffic stop, followed by the driver's voluntary consent to a search, we do not address the Government's alternative argument that Herbin lacked standing to move to suppress the weapon discovered in the car.

### III.

For the foregoing reasons, we REVERSE the judgment of the District Court granting Herbin's motion to suppress, and we REMAND for further proceedings consistent with this opinion.