UNITED STATES of America,

v.

Tommy HOWARD.

No. 1:03–CR–00079.

United States District Court,
S.D. Ohio,
Western Division.

Oct. 7, 2003.

C Ransom Hudson, Federal Public Defender, Cincinnati, OH, for Defendant.

Timothy D Oakley, United States Attorney's Office, Cincinnati, OH, for Plaintiff.

## ORDER

SPIEGEL, Senior District Judge.

This matter is before the Court on Defendant's Motion to Suppress (doc. 16) and the United States' Response (doc. 18). The Court held an evidentiary hearing on September 25, 2003.

## I. BACKGROUND

This case involves what the government states was a routine traffic stop by police that resulted in the discovery of a loaded weapon, powder cocaine, a digital scale, bags of marijuana, and several small empty plastic bags in Defendant's vehicle. According to the government, on April 7, 2003, officers from the Cincinnati Police Department stopped the Defendant for a traffic violation on Westwood Northern Avenue in Cincinnati (doc. 18). Although the government's memoranda fails to specify the traffic violation, at the September 25, 2003 hearing, Cincinnati Police Officer Kevin Plummer testified that he saw Defendant turn left on a red light and almost hit some pedestrians in the crosswalk.[1]

---

1. Defendant contests that he was turning on a      green arrow, and that Officer Plummer was

Upon approaching and questioning the Defendant, the police discovered Defendant was not in possession of a valid driver's license (*Id.*). Rather, Defendant had only a temporary driver's permit and was not at the time traveling with a licensed driver in the vehicle as required by law (*Id.*). The Defendant appeared nervous to the officers (*Id.*). The officers then requested consent to search the vehicle, and the Defendant voluntarily consented to such a search (*Id.*). As the Defendant exited the vehicle, the officers observed a semi-automatic handgun protruding from underneath the driver's seat (*Id.*). The weapon, a loaded Hi–Point .380 caliber handgun, was located directly underneath where defendant was sitting in the vehicle (*Id.*). At this point, the Defendant tried to flee on foot from the police officers (*Id.*). He was apprehended after a brief chase (*Id.*). The officers subsequently searched the vehicle and discovered powder cocaine, a digital scale, bags of marijuana, and several small empty plastic bags (*Id.*). An officer then gave Defendant his Miranda warnings (*Id.*). During the course of questioning, Defendant claimed that he had found the contraband in a bag on Harrison Avenue (*Id.*).

Defendant Howard argues that the stop, arrest, and search of his person by officers were in violation of the Fourth Amendment and that any statements made by him were made in violation of his *Miranda* rights (doc. 16).

## II. DISCUSSION

### A. Defendant's Motion to Suppress and Government's Response

Defendant Howard argues that (1) law enforcement officers lacked a reasonable suspicion to stop or detain him, (2) the initial stop by the officers constituted an arrest that was conducted without probable cause, and (3) any consent given by Defendant to search his vehicle was involuntarily obtained (doc. 16). Defendant argues that without a warrant the government bears the burden of proving that the officers were justified in stopping and detaining the Defendant (*Id.*). Citing *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), Defendant claims that the officers must be able to articulate specific facts which taken together with rational inferences would lead one to believe that criminal activity was afoot. (*Id.*). Here, Defendant argues, police officers did not have probable cause to initially stop his vehicle and that the stop therefore constituted an illegal arrest of Defendant's person (*Id.*). Defendant further contends that being unlawfully seized by the police without any reasonable suspicion or probable cause, any consent subsequently obtained from him must be declared invalid (*Id.*). Thus, Defendant asserts that any evidence, including statements and physical evidence, collected as a result of that search should be suppressed as "fruit of the poisonous tree" (*Id.*).

The government responds, relying on *Whren v. United States*, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996), for the proposition that law enforcement officers

---

coming from the opposite direction and could not observe the arrow. At the hearing, Officer Plummer's testimony was initially vague, but upon further questioning he stated that he was sure the light facing him was red as he observed Defendant turn in front of him. The Court expressed its dismay with the parties

for not presenting any evidence as to the timing of the stop light or the green arrow.

Defendant argued that as he turned left on the arrow, he was confronted by jay-walking pedestrians. As such, he posits, Officer Plummer had no valid reason to stop him.

are justified in stopping vehicles for violating traffic laws and that such stops can lead to a subsequent search of the offending vehicle (doc. 18). The government argues that Defendant's vehicle was properly stopped and that Defendant thereafter voluntarily gave his consent to the search of his vehicle (*Id.*). The gun found in Defendant's vehicle was found only after consent was given and the Defendant had exited the vehicle (*Id.*). The discovery of the gun in addition to Defendant's flight attempt gave officers sufficient probable cause to suspect that the Defendant had more contraband in his possession and that he was engaged in criminal behavior (*Id.*).

In addition, the government points out that the Defendant waived his rights by voluntarily consenting to the search of his vehicle (*Id.*). The government concludes that even if consent is found to be involuntarily given, under *Whren* it was clear to officers that Defendant was engaged in some form of deception to avoid the discovery of his true identity, and therefore they were justified in pursuing the search of Defendant's vehicle incident to his arrest (*Id.*).

■ The Court finds that this case turns on whether initially there was an objectively valid traffic stop. *United States v. Herbin*, 343 F.3d 807, 809 (6th Cir.2003) ("[t]he legality of a traffic stop turns on the validity of the officers' objective explanation for making the stop, not on the subjective intentions of the officers in initiating the stop. A traffic stop supported by probable cause...may not be invalidated...on the ground that the officers stopped the car for 'pretextual' reasons-which is to say, acted upon a violation of one set of laws (*e.g.*, run-of-the-mill traffic laws) in order subjectively to enforce another set of laws (*e.g.*, drug-trafficking laws)"). As stated at the September 25, 2003 hearing, the Court finds that Officer Plummer testified that he observed Defendant nearly hit pedestrians in the crosswalk. The Court found therefore, that even if Defendant was turning on a green arrow, Officer Plummer had an objectively valid reason to pull Defendant over for questioning.

Defendant argued at the hearing that there was a lapse of a number of minutes before he was stopped, therefore raising questions as to Officer Plummer's motivation for stopping him. However, the Court finds credible Officer Plummer's testimony that he was waiting for a safe location to pull Defendant aside.

■ Having found that the near-miss of pedestrians in a cross walk constituted a reasonable basis for a traffic stop, the government is correct that the officers had sufficient probable cause to conduct a search of Defendant's person and vehicle. Officer Plummer described the Defendant as having a "nervous" demeanor and, taken in addition to Defendant's lack of a valid license, these observations amounted to sufficient probable cause to prompt a search of Defendant's vehicle.

Though the parties dispute whether Defendant voluntarily gave his consent to search his vehicle, Defendant's position lacks merit as he was properly stopped for a traffic violation. A traffic stop is reasonable when an officer observes a violation of the traffic code. *Whren*, 517 U.S. 806, 116 S.Ct. 1769 (1996).[2] Pursuant to a valid

---

**2.** In *Whren v. United States*, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996), the Supreme Court found that police officers were reasonable to stop a vehicle for failing to use its signals and for speeding. *Id.* After stopping the vehicle, the officers saw contraband in plain view. *Id.* The officers were justified in seizing the contraband under the plain view doctrine, *Horton v. California*, 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990), and the arrest of the driver and passenger were upheld by the Court as supported by probable cause. *Id.*

traffic stop, a police officer may order both the driver and the passengers out of the vehicle. *Maryland v. Wilson,* 519 U.S. 408, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997).

 After Defendant had exited the vehicle, the loaded gun was discovered in plain view by the officers. Such evidence is admissible under *Maryland* so long as the initial traffic stop was valid, which it was. Defendant's attempted flight after the discovery of the gun gave the officers reasonable suspicion that Defendant had something more to hide and was engaged in criminal behavior. Thus, police were justified in arresting him subsequent to his flight attempt. The search of Defendant's person incident to his arrest was validly conducted and any evidence collected from such search should not be suppressed from the record.

Defendant's argument that the initial stop constituted an arrest without probable cause is without merit because a routine traffic stop such as this constitutes a brief investigative detention, not an arrest. *Florida v. Royer,* 460 U.S. 491, 500, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983), *United States v. Richardson,* 949 F.2d 851, 857 (6th Cir.1991). Furthermore, Officer Plummer had a valid reason to stop Defendant, in that Plummer believed Defendant had run a red light, and Plummer was certain that he had seen Defendant nearly miss hitting pedestrians in the crosswalk.

As for Defendant's statements, Officer Plummer testified that police Mirandized Defendant prior to any questioning. The Court finds Officer Plummer's testimony credible, and as such, all such statements should be admissible.

## III. CONCLUSION

The Court finds the testimony of Officer Plummer in this case, though a bit vague, to be credible, and is convinced that correct procedure was followed in conducting Defendant's arrest. Defendant's stop, the search of his car, his arrest, and the subsequent questioning were all reasonable and in accordance with Fourth Amendment principles. The Court does not find Defendant's arguments at the hearing on September 25, 2003, nor in his Motion to Suppress Evidence, persuasive to the contrary. Therefore, the Court hereby DENIES the Defendant's Motion to Suppress (doc. 16).

SO ORDERED.