**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Torrey A. BURRIS, Defendant–**
**Appellant.**

No. 02–3082.

United States Court of Appeals,
Sixth Circuit.

Oct. 20, 2003.

Phillip J. Tripi, U.S. Attorney's Office, Cleveland, OH, for Plaintiff–Appellee.

Edward G. Bryan, Federal Public Defender's Office, Cleveland, OH, for Defendant–Appellant.

Before BOGGS, Chief Circuit Judge; NELSON and COLE, Circuit Judges.

**PER CURIAM.**

Torrey Burris appeals from his conviction in district court under 18 U.S.C. § 922(g)(1), which criminalizes the possession of firearms by felons. Burris was convicted after he entered a conditional plea of guilty in which he reserved his right to appeal the district court's denial of his motion to suppress evidence. We now review the denial of the suppression motion and, finding no error, we affirm.

**I**

Burris was arrested on the night of March 28, 2001, in Medina, Ohio. Around 3:30 a.m., Medina County Police Officer Daniel Warner observed Antony Jeffries driving a Chevy Beretta with no front license plate and with something dragging beneath the car. Two other passengers were in the car. One of these passengers was Burris, who was seated in the front passenger seat. With a police dog in the cruiser with him, Officer Warner pulled the car over shortly after it left a gas station.[1]

After obtaining Jeffries's driver's license and registration, Officer Warner returned to his patrol car and radioed his dispatcher. He asked the dispatcher to check Jeffries's information and to send another officer to the scene for back-up assistance. While waiting for the information to be processed, Officer Warner returned to Jeffries's car and asked the three passengers why they were out so late and where they had been. Although the three men explained they had been visiting a female, they could not provide an exact address or the full name of the woman they visited. Officer Warner then asked Burris and the third passenger, Preston Harris, for identi-

---

1. Burris does not dispute that the police officer had a valid reason to stop the car initially. In Ohio, license plates must be displayed "in plain view on the front and rear of the motor vehicle." Ohio Rev.Code § 4503.21.

fication. Burris could only produce his social security number.

Officer Warner then returned to his car and radioed in the information on Harris and Burris. While he waited for a response, the back-up officer arrived on the scene. The dispatcher then responded, explaining that Jeffries (the driver) had a valid license, but that Burris had given a social security number that belonged to a woman.[2] As it turned out, this was incorrect. Burris had given the correct information, but the dispatcher thought that "Torrey" (Burris's first name) was a woman's name.

Officer Warner subsequently ordered Jeffries out of the car in order to show him the piece of cloth dragging beneath his vehicle. He also asked why the front license plate was missing. Jeffries explained that the car had been in a wreck and the front of the car could no longer hold a license plate. The officer testified that he doubted this explanation.

Officer Warner also desired to conduct a canine sniff of the exterior of the car. Accordingly, he asked Burris to get out of the car. As Burris did so, the police officer observed a small handgun in the seat in which Burris had been sitting. All three men were then arrested and no canine sniff was ever conducted.

Because of a prior felony conviction, Burris was indicted on one count of possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1). On June 11, 2001, Burris filed a motion to suppress evidence. The district court denied this motion on August 21, 2001, and Burris subsequently entered a conditional plea of guilty in which he reserved the right to appeal the denial of his motion to suppress. The district court sentenced Burris to twenty-two months in prison on January 4, 2002. Burris now appeals the denial of his suppression motion.

## II

When reviewing the denial of a suppression motion, we review the district court's factual findings for clear error and its legal conclusions *de novo.* *United States v. Hurst,* 228 F.3d 751, 756 (6th Cir.2000). We must also review the evidence "in the light most likely to support the district court's decision." *United States v. Navarro–Camacho,* 186 F.3d 701, 705 (6th Cir. 1999) (quoting *United States v. Braggs,* 23 F.3d 1047, 1049 (6th Cir.1994)).

Under *Whren v. United States,* a stop is valid if the police officer has probable cause to believe a motorist has violated a traffic law. 517 U.S. 806, 819, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). In addition, it is undisputed that the police may order drivers and passengers out of the car during a traffic stop. *Maryland v. Wilson,* 519 U.S. 408, 415, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997) ("[A]n officer making a traffic stop may order passengers to get out of the car pending completion of the stop."). In this case, the defendant does not dispute the validity of the initial traffic stop given the lack of a front license plate. The defendant does, however, makes two distinct arguments as to why the firearm should have been suppressed. First, Burris argues that the stop had already concluded when the police ordered him out of the vehicle. Second, even assuming the stop had not concluded, Burris argues that Officer Warner delayed the stop in order to perform a canine sniff. We address each argument in turn.

---

**2.** The dispatcher also confirmed that Harris had a suspended license but, because he was not driving, this did not present a problem.

In support of his argument that the stop had already concluded when the police officer ordered the defendant out of the car, Burris cited *United States v. Mesa*, 62 F.3d 159, 162 (6th Cir.1995) ("Once the purpose of the initial traffic stop [is] completed, there is no doubt that [an] officer [cannot] further detain the vehicle or its occupants").[3] Specifically, the defendant argues that the police ordered him out of the car after they knew that Jeffries's license was valid, and after Jeffries had removed the cloth from underneath the car. Thus, according to Burris, the purpose of the stop had been completed.

■ The district court made a number of factual findings favoring the opposite conclusion that the purposes of the stop had not yet been accomplished. First, Officer Warner testified that he had not yet completed radio checks, given his reasonable belief that Burris had provided a phony social security number. Officer Warner also testified that he had not yet decided whether to issue a traffic citation for the failure to display a front license plate. The district court found "this testimony credible and consistent with the other evidence." This is in addition to the officer's skepticism after the passengers' evasive responses to his earlier questioning. Finding no clear error in the district court's factual findings, we hold that the district court did not err in its subsequent legal conclusion that the stop had not yet concluded.

■ The defendant also argues that even assuming the stop was ongoing, Officer Warner unduly delayed the stop in order to perform a canine sniff. Again,

the district court made several factual findings that rebut the defendant's argument. First, Officer Warner had the canine with him when the stop occurred. He did not have to wait for the dog to arrive. And such a sniff would not have been a search within the meaning of the Fourth Amendment. *United States v. Reed*, 141 F.3d 644, 650 (6th Cir.1998). Second, it was clear that the officer needed Jeffries (the driver) to get out of the car to address both the missing license plate and the blanket dragging beneath the car. The district court found that "Burris was ordered out of the vehicle almost simultaneously with the completion of Officer Warner's interaction with Jeffries [and that] the entire traffic stop, from completion to arrest, took only a matter of minutes." Failing to find clear error in these factual findings, we hold that the district court did not err in concluding that Officer Warner did not unduly delay the stop.

### III

Accordingly, the district court's denial of the suppression motion is AFFIRMED.

■

---

**3.** The applicability of *Mesa* has been called into question by our more recent decision in *United States v. Burton*, 334 F.3d 514, 517 (6th Cir.2003). *Burton* suggests that under some factual scenarios, the police may detain passengers after the stop has concluded so

long as the detention is reasonable in light of all the circumstances. *Ibid.* (citing *Ohio v. Robinette*, 519 U.S. 33, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996)). We need not and do not reach this issue here, however, given our conclusion that the stop had not yet concluded.