**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Joel Banuelos ALVA, Defendant–
Appellant.**

No. 03–5175.

United States Court of Appeals,
Sixth Circuit.

July 20, 2004.

---

Lorraine Craig, Asst. U.S. Attorney, U.S. Attorney's Office, Memphis, TN, for Plaintiff–Appellee.

Bruce I. Griffey, Office of Bruce Irwin Griffey, Memphis, TN, for Defendant–Appellant.

Before: KEITH and CLAY, Circuit Judges; and OBERDORFER, District Judge.*

OBERDORFER, District Judge.

Defendant–Appellant Joel Banuelos Alva ("Alva") appeals his jury conviction for conspiracy to possess with intent to distribute a controlled substance, in violation of 21 U.S.C. § 846, and possession with intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(a)(1). He contends that the evidence seized during a consent search of his car should have been suppressed because the police officer's request for consent to search violated the Fourth Amendment. He also contends that the police officer was allowed to offer expert opinions without being qualified as an expert. For the reasons set forth below, we **AFFIRM** the conviction.

## I. BACKGROUND

### A. Facts

On March 3, 2002, in Memphis, Tennessee, an officer of the Tennessee Highway Patrol, William J. Gregory, III, stopped the car in which Alva was riding for speeding. The car, which had a California license plate, was being driven by Alva's daughter-in-law, Blanca Mora. Officer Gregory noticed that the car did not have a front license plate, which he knew to be required in California (although not in Tennessee). Officer Gregory had Mora step out of the car. He observed that she was "dirty," prompting her to explain that the car had earlier run into some snow. Mora showed Officer Gregory a California driver's license. She told him that the car belonged to Alva. He asked her where she and Alva were going, a "standard" question, and she told him "to see some cousins like his grandparents." J.A. 73, 89.

Officer Gregory then went to the passenger side of the vehicle to talk to Alva, who was still in the car. When he asked Alva where they were going, Alva said that

---

* The Honorable Louis F. Oberdorfer, United States District Judge for the District of Columbia, sitting by designation.

he was taking Mora to see his son in Charleston, South Carolina, and that she might stay there. Alva also showed Officer Gregory a picture of himself in a uniform, prompting Officer Gregory to ask Alva if he was a police officer. Alva responded that he "couldn't make it as a police officer," but that he was some kind of security guard. While talking to Alva, Officer Gregory noticed an strong smell of deodorizer coming from the car.

When Officer Gregory stopped the car for speeding, he had no reason to suspect other criminal activity. However, during the stop he became suspicious because (1) he found Mora's explanation of why she was dirty unconvincing; (2) Mora and Alva told conflicting stories about the purposes for their trip; (3) Alva would not look at him; (4) Alva intentionally and for no apparent reason showed him a photograph of himself in a uniform; (5) the missing front license plate; and (6) the strong smell of deodorizer, which he believed could be used to mask the odor of drugs.

Officer Gregory proceeded to ask Alva if there was any contraband in the car. Alva replied that there was not. Officer Gregory then asked Alva whether he could conduct a search of the car for contraband. At this point, nine minutes had elapsed since Officer Gregory stopped Alva's car. After Alva said yes, Officer Gregory returned to his squad car to run checks on Mora's driver's license and the car's registration. While waiting for the results, he brought Alva a consent to search form, which Alva signed.

Officer Gregory proceeded to search the car. In the trunk of the car, he found silicone and putty. After finding four packages of cocaine under a panel in the car, he arrested both Alva and Mora. A later search uncovered additional cocaine.

## B. Procedural History

On March 20, 2002, a federal grand jury indicted Alva[1] and charged him with one count of conspiracy to possess with intent to distribute a controlled substance, in violation of 21 U.S.C. § 846, and two counts of possession with intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(a)(1).

Alva filed a motion to suppress the cocaine found in his car. He argued that his consent to search was invalid because the scope and duration of the stop—in particular Officer Gregory's questions, up to and including his request for permission to search—violated the Fourth Amendment.[2]

The magistrate judge concluded that the information Officer Gregory learned during the stop, while insufficient to establish probable cause for a drug offense, was sufficient to justify his request for consent to search the car. JA 51. Alva objected, arguing that the request for consent to search was unjustified because it exceeded the purposes of the stop and was not based on a reasonable suspicion that Alva was engaged in criminal activity. JA 59. The district court adopted the magistrate's report and recommendation in its entirety and denied the motion to suppress. JA 61.

Trial commenced on October 7, 2002. During the trial, Officer Gregory was asked by the government why he found it "significant" that there was silicone and putty in the trunk of Alva's car. JA 124. Officer Gregory responded as follows: "A lot of times people transporting drugs, they know that agencies now have canine dogs, and what the silicone does if you seal

---

1. Mora was also indicted, but she was found not guilty at trial.

2. Alva also challenged the stop itself, the voluntariness of his consent to search, and the extent of the search. He does not appeal the district court's determination that none of these claims had merit. Nor does he appeal the district court's denial of his motion to suppress his statement.

up the packages——." At that point, defense counsel objected on the ground that Officer Gregory was not qualified to give an expert opinion about how drug dealers in general behave. JA 124–25. The district court overruled the objection, accepting the government's contention that the testimony was not being offered for its truth but "really just goes to why he [Officer Gregory] did what he did as opposed to anything else." JA 125–26. Officer Gregory's testimony then continued as follows:

Q: Officer, I believe I had asked you about why you found the silicone and putty significant as you were looking in the trunk and why that led to [sic] your suspicions to be heightened, and if you would, please answer the question.

A: Yes, ma'am. For the silicone and the putty, you know, drugs give off a very strong odor to dogs, and to make contact with them, recognize it as being a narcotic, so what they do is wrap—use some type of masking agent, and as far as the silicone being able to seal the package up, that way no air coming out of that package, so a dog would not alert, and the putty will actually just reinforce that itself so there's no odor coming out of the packages, ma'am.

JA 127.

On October 11, 2002, the jury convicted Alva on all counts. On January 22, 2003, the district court sentenced Alva to 188 months imprisonment, to be followed by five years supervised release. This timely appeal followed.

## II. DISCUSSION

Alva raises two issues on appeal. First, he contends that the district court should have granted his motion to suppress because the scope of Officer Gregory's questioning during the traffic stop, up to and including his request for consent to search, violated the Fourth Amendment. Second, he contends that Officer Gregory was erro-

neously permitted to offer expert testimony without being qualified as an expert.

### A. Denial of Motion To Suppress

"A district court's denial of a motion to suppress is reviewed under a hybrid standard. Its findings of fact are reviewed under the clearly erroneous standard, but its conclusions of law are reviewed de novo." *United States v. Burton,* 334 F.3d 514, 516 (6th Cir.2003), *cert. denied,* —— U.S. ——, 124 S.Ct. 1113, 157 L.Ed.2d 941 (2004). Alva challenges the district court's legal conclusion that the request for consent to search did not violate the Fourth Amendment, so *de novo* review applies.

Alva argues that the scope of Officer Gregory's questioning during the traffic stop, up to and including his request for consent to search, violated the Fourth Amendment because the questions were neither "reasonably related in scope to circumstances justifying the initial interference," nor based on "a reasonable and articulable suspicion that criminal activity was afoot." *United States v. Hill,* 195 F.3d 258 (6th Cir.1999), *cert. denied,* 528 U.S. 1176, 120 S.Ct. 1207, 145 L.Ed.2d 1110 (2000) (citing *Terry v. Ohio,* 392 U.S. 1, 20, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)); *see also United States v. Palomino,* 100 F.3d 446, 449 (6th Cir.1996). The government responds, citing the Supreme Court's decision in *Ohio v. Robinette,* 519 U.S. 33, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996) and this Court's decision in *Burton,* 334 F.3d at 516–18, that the correct legal standard is whether the questions, including the request for consent to search, were "reasonable under the particular facts of the case," and that Officer Gregory's questions satisfy that test.

In *Ohio v. Robinette,* the Supreme Court held that the Fourth Amendment does not require that a lawfully seized defendant be advised that he is "free to go" before being

asked for consent to search. In *Robinette*, the defendant had been stopped for speeding. After the officer had completed everything he need to do relating to the traffic stop (and decided not to issue a ticket), he asked the defendant whether he was carrying any contraband (the defendant said no) and whether he could search the car (the defendant said yes). After the search turned up contraband, the defendant was arrested and charged under Ohio law. After his motion to suppress was denied, the defendant pleaded no contest and was found guilty. On appeal, the Ohio Supreme Court held that the motion to suppress should have been granted because the defendant had a right to be informed that he was "free to go" before the officer asked him any additional questions. The Supreme Court reversed. It held that the *per se* rule adopted by the Ohio Supreme Court was inconsistent with the rule that "[t]he Fourth Amendment test for a valid consent to search is that the consent be voluntary, and '[v]oluntariness is a question of fact to be determined from all the circumstances.'" 519 U.S. 33, 40, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 248–49, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973)).

In *Burton*, this Court held that under *Robinette* an officer's request for consent to search in the context of a traffic stop does not violate the Fourth Amendment as long as it is "a reasonable request under the circumstances." *Burton*, 334 F.3d 514, 518 (6th Cir.2003); *see also United States v. Guimond*, 116 F.3d 166, 170–71 (6th Cir.1997) (that consent to search is given during an illegal detention does not automatically establish that consent was involuntary). The Court expressly rejected the suggestion that a request for consent to search is unlawful "absent reasonable suspicion that other criminal activity was afoot." *Burton*, 334 F.3d at 517.[3] Accordingly, we must decide whether Officer Gregory's request for consent to search was a reasonable request under the circumstances.[4]

Officer Gregory asked the following questions that were arguably unrelated to the purpose of the traffic stop: (1) he asked Mora why she was dirty; (2) he asked both Alva and Mora where they were going and why; (3) he asked Alva if there was anything illegal in the car; and (4) he asked Alva for permission to search the car. "The record provides no reason to suspect either that these questions were unusually intrusive or that asking them made this traffic stop any more coercive that a typical traffic stop." *Burton*, 334 F.3d at 518. Moreover, these questions are materially identical to the questions asked and found reasonable in *Burton*. Accordingly, Officer Gregory's questions, including his request for consent to search, did not violate the Fourth Amendment, and the motion to suppress was properly denied.

## B. Admission of Officer's "Expert" Testimony

■ Alva also contends that the district court erred in admitting Officer Gregory's testimony that silicone and putty are sometimes used by drug dealers to mask the odor of drugs from drug-sniffing dogs. A district court's decision to admit evidence is reviewed for abuse of discretion. *United States v. Sanders*, 95 F.3d 449 (6th Cir.1996).

---

3. The opinion in *Burton* contains an extensive discussion of the relevant Supreme Court and Sixth Circuit caselaw, which we need not repeat here. *See Burton*, 334 F.3d at 516–18.

4. Having concluded that *United States v. Burton* controls, we need not decide whether the facts also support the conclusion that Officer Gregory had a reasonable suspicion that criminal activity was afoot.

Alva argues that by admitting this testimony the district court permitted Officer Gregory to offer an expert opinion without being qualified as an expert. The government maintains that the testimony was not offered as an expert opinion but merely to explain why Officer Gregory took the steps he did during the search—an explanation that was necessary because without it the jury might not find him credible. We need not resolve this dispute. The evidence against the defendant was substantial, and Officer Gregory's testimony added little if anything to the government's case. Thus, even if the admission of Officer Gregory's testimony was error, the error was harmless.

## III. CONCLUSION

For the foregoing reasons we **AFFIRM** the conviction.