RENDERED:  NOVEMBER 3, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-1288-MR

SETH WILSON                                                                    APPELLANT

v.
APPEAL FROM GALLATIN CIRCUIT COURT
HONORABLE JAMES R. SCHRAND, II, JUDGE
ACTION NO. 22-CR-00038

COMMONWEALTH OF KENTUCKY                                       APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CALDWELL, DIXON, AND EASTON, JUDGES.

EASTON, JUDGE:  The Appellant ("Wilson") challenges the Gallatin Circuit

Court's decision denying his motion to suppress evidence gathered after a traffic

stop.  Wilson entered a conditional guilty plea.  Finding no error in the circuit

court's decision, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

After midnight on March 19, 2022, Deputy Mason Sizemore

("Sizemore") with the Gallatin County Sheriff's Office was following a pick-up

truck driven by Wilson. As the truck crested a hill, Sizemore could see the inside of the truck as his headlights shone through the tinted back window of the truck. Sizemore saw that Wilson was not wearing a seatbelt but that his passenger was wearing a seatbelt. Sizemore initiated a traffic stop.

The traffic stop prompted a body camera recording with Sizemore showing his interaction with Wilson and his passenger. When Sizemore approached the driver's door, he asked Wilson if he had taken his seatbelt off, and Wilson said he had. Sizemore told Wilson that he saw Wilson take the seatbelt off. Sizemore explained this statement may have been part of a questioning technique to see how Wilson would respond.

There was no further comment to suggest whether Sizemore was referring to Wilson's action of taking the seatbelt off was as Sizemore approached the truck or if Wilson's taking off his seatbelt occurred previously. Sizemore had observed Wilson in the truck before Sizemore followed the truck from a prior location. The observation could have been made while Wilson was driving. When Sizemore explained the seatbelt violation was the reason for the stop, Wilson did not protest that he had only taken it off as Sizemore approached the vehicle. The passenger had her seatbelt on as Sizemore had observed while he followed the truck.

Sizemore discussed with Wilson his recent prior arrest by Sizemore and a pending court date. Sizemore gathered the driver's licenses of both occupants and returned to his police vehicle. In discussion with another officer present, Sizemore learned the passenger was on probation, and the other officer suggested she may have a warrant because he recalled the passenger running from him on a prior occasion. Sizemore "ran" the licenses through a computer system to check for any issues.

While running the licenses, Sizemore asked if another officer already on the scene wanted to deploy a drug detection dog, which significantly was already on the scene. Sizemore decided to first ask for consent for a search. When Sizemore again approached the truck, the passenger apologized for her attitude when Sizemore first spoke to her when she suggested he did not really need to see her identification. While standing at the door of the truck talking to Wilson, Sizemore then heard dispatch say that both occupants of the truck were "clear," indicating no warrants to be processed.

Within seconds, Sizemore asked for permission to search. Wilson denied consent at this point because it was not his truck. Sizemore then returned to his vehicle to begin working on the seatbelt citation. Sizemore could be seen working on his computer.

Less than one minute later, another officer told Sizemore that Wilson had asked to talk to him. Sizemore returned to the truck. Wilson said there was nothing in the truck, but Sizemore could look if he wanted. Sizemore reminded Wilson that it was his decision adding "you know how it goes," referring to Wilson's prior experience with law enforcement. After clearly telling Wilson that any consent would not necessarily make the stop any shorter, Wilson said "it don't matter." Wilson and his passenger then facilitated the search by exiting the truck.

At this point, the dog was brought out and started sniffing the truck. While this was going on, Sizemore was seen in his vehicle working on the citation form on his computer. Then the dog quickly alerted to drugs in the truck. The interaction was no longer a routine traffic stop. Wilson was ultimately charged with trafficking in methamphetamine. Upon his conditional guilty plea, Wilson was sentenced to seven years to serve, concurrent with other pending charges. We will develop any further relevant factual details in our following analysis.

STANDARD OF REVIEW

"A trial court's denial of a motion to suppress is reviewed under a two-prong test. First, we review the trial court's findings of fact under the clearly erroneous standard. Under this standard, the trial court's findings of fact will be conclusive if they are supported by substantial evidence. Second, we review *de*

-4-

*novo* the trial court's application of the law to the facts." *Rhoton v. Commonwealth*, 610 S.W.3d 273, 275-76 (Ky. 2020) (footnotes omitted).

## ANALYSIS

"[T]he ultimate touchstone of the Fourth Amendment is 'reasonableness[.]'" *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403, 126 S. Ct. 1943, 1947, 164 L. Ed. 2d 650 (2006). With respect to stops of vehicles, the law has developed specific rules defining this reasonableness.

A police officer may stop a driver when the officer observes a traffic violation even if that violation is not the real motivation for the stop. *Wilson v. Commonwealth*, 37 S.W.3d 745, 749 (Ky. 2001). The presence of the drug detection dog from the beginning suggests Sizemore was looking for drug activity. His recent prior history with Wilson could have motivated Sizemore to watch Wilson in the hope of observing a traffic violation to justify a stop. The law allows this.

The observed traffic violation was not wearing a seatbelt as required by KRS[1] 189.125. The circuit court found that Sizemore had observed Wilson driving without wearing his seatbelt. Wilson argues against this finding because of the conversation Sizemore and Wilson had at the beginning of the stop as well as the tint to the window to cast doubt on Sizemore's observation.

---

[1] Kentucky Revised Statutes.

While the citation eventually written describes the seatbelt violation as the reason for the stop, Wilson was not charged with the seatbelt violation. Wilson suggests this means it did not happen. Sizemore had discretion in deciding which charges to bring. Given the serious charges which resulted from the stop, Sizemore should not be criticized for not adding the seatbelt charge. If he had, he might have been criticized for "piling on" with the charge, which can result in only a minimal fine with court costs waived. *See* KRS 189.990 (24)-(26).

Part of the deference owed to the circuit court comes from the first-hand opportunity of the circuit judge to observe the witnesses and other evidence. *See Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003). With the evidence of record, the circuit court's finding about Sizemore observing a seatbelt traffic violation is not clearly erroneous. Having observed a violation, Sizemore was justified in stopping Wilson.

The length of a detention should last only so long as required to achieve the justifiable purpose of the stop. *Commonwealth v. Conner*, 636 S.W.3d 464, 472-73 (Ky. 2021). The stop of Wilson should last only so long as needed to write and issue a proper citation unless subsequent events provided new suspicion of criminal activity to continue the detention.

Before we address the other events during this stop, we recognize there are standard practices during a traffic stop which take time and do not offend

the Fourth Amendment. Sizemore was permitted to check for valid insurance and see whether any occupants of a vehicle had active warrants. *Connor, supra*, at 473. Sizemore followed this typical procedure in this case.

Wilson puts great emphasis on the moments between the radio announcement of "clear" which occurs while Sizemore was at the truck Wilson was driving and Sizemore's immediate asking for consent, which was initially denied. Asking questions about contraband in a vehicle and for consent to search does not impermissibly extend a traffic stop. *See United States v. Burton*, 334 F.3d 514 (6th Cir. 2003).

It is ironic that Wilson extended the stop when he asked to again speak to Sizemore, who was at that point working on the citation. At this point, Wilson gave consent to a search. Even if Wilson had not consented, the deployment of the dog would not have extended the stop while Sizemore wrote the citation.

A dog sniff itself is not a search. *See Commonwealth v. Bucalo*, 422 S.W.3d 253, 258 (Ky. 2013). The question here is about the length of detention. Because the dog was already there, no time was added to the detention in this case to get the dog to the scene. Sizemore had not finished writing and issuing the citation when Wilson consented to a search and the dog then alerted on the truck.

Once the dog alerted on the truck, Sizemore and the other officers clearly had additional suspicion of criminal activity to continue the detention ultimately leading to the discovery of methamphetamine resulting in the charges to which Wilson pled guilty.

## CONCLUSION

The findings of fact of the Gallatin Circuit Court are not clearly erroneous. The circumstances of the traffic stop and subsequent events justified the length of the detention. The discovery of the methamphetamine and other evidence was not the result of an unreasonable seizure and search. The Gallatin Circuit Court is AFFIRMED.

ALL CONCUR.


BRIEF FOR APPELLANT:

Molly Mattingly
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Harrison Gray Kilgore
Assistant Solicitor General
Frankfort, Kentucky