**COMMONWEALTH of Kentucky, Appellant,**

**v.**

**Steven Ronald ERICKSON, Appellee.**

**No. 2002–CA–002084–MR.**

Court of Appeals of Kentucky.

Feb. 20, 2004.

As Modified March 12, 2004.

Albert B. Chandler III, Attorney General of Kentucky, Dennis W. Shepherd, Assistant Attorney General, Dennis W. Shepherd, Frankfort, KY, for appellant.

Delbert K. Pruitt, Paducah, KY, for appellee.

Before COMBS, JOHNSON, and MINTON, Judges.

## OPINION

COMBS, Judge.

Pursuant to KRS[1] 22A.020(4), the Commonwealth has appealed from an order of September 11, 2002, of the McCracken Circuit Court that granted Steven Erickson's motion to suppress evidence seized from his vehicle. The Commonwealth challenges the ruling that Erickson's consent to the search of his vehicle resulted from an unconstitutional detention. After reviewing the record, we conclude that the trial court erred as a matter of law in suppressing the evidence. Therefore, we reverse and remand.

On May 30, 2002, a McCracken County grand jury indicted Erickson on charges of first-degree trafficking in a controlled substance, possession of drug paraphernalia, operating a motor vehicle without an illuminated rear license plate, and being a second-degree persistent felony offender. All of the charges were based on the seizure of ten small bags containing methamphetamine following a routine traffic stop of Erickson's vehicle on April 28, 2002. In moving to suppress the evidence, Erickson argued that he had been unconstitutionally detained by police officers without reasonable suspicion in violation of *U.S. v. Mesa*, 62 F.3d 159 (6th Cir.1995).

The only evidence presented at the suppression hearing was the testimony of Deputy Sheriff David Archer on behalf of the Commonwealth. Archer testified that he initially stopped Erickson's vehicle because its rear license plate was not illuminated—a violation of KRS 186.170. After requesting to see Erickson's driver's license and proof of insurance, Deputy Archer ran a computer check on Erickson from his police cruiser. An assisting deputy simultaneously checked the identifications of Erickson's two passengers. As all the paperwork appeared to be in order, Deputy Archer returned to Erickson's car

1. Kentucky Revised Statutes.

and gave him a verbal warning to get the light on the license plate repaired.

After all documents had been returned to Erickson and his passengers, Archer testified that he and Erickson engaged in a conversation about the wheels on the car and that they were "chit-chatting back and forth." The officer testified that while they were engaging in this discussion, he asked if Erickson minded if he looked inside the car. Without hesitation, Erickson responded, "Sure, go ahead. Take a look in the car." A search of the vehicle uncovered ten baggies containing methamphetamine.

On cross-examination, Deputy Archer acknowledged that he had no reasonable suspicion to believe that Erickson or his passengers were engaged in any criminal activity and that the only reason that prompted the stop was the unlighted license plate. He also testified that he could not remember whether or not he had told Erickson that he was free to leave. However, before asking for permission to search the car, he was certain that Erickson and his passengers were in the vehicle, that he had returned all items belonging to Erickson and his passengers, and that he had given the warning concerning the repair of the license plate.

Neither Erickson nor his passengers testified at the hearing. He presented no evidence to dispute Archer's characterization of their conversation as anything other than cordial; he did not contradict Archer's perspective of his consent as offhand and unequivocal. Erickson based his motion to suppress solely on his argument that his consent was invalid as a matter of law. He argued that as soon as Archer had returned his documentation and had given him a verbal warning, the purpose for the stop was accomplished. He contended that absent reasonable suspicion that other criminal activity was in progress, any further delay was unlawful and that, therefore, the evidence seized after that point was tainted and should be suppressed.

The Commonwealth argued that after Deputy Archer issued the verbal warning, he engaged Erickson in a consensual conversation. It also noted that there was no evidence of coercion on the part of the officers to vitiate the voluntariness of Erickson's consent. Under these circumstances, the Commonwealth contended that Fourth Amendment protections were not implicated and that the police officers did not have to demonstrate a reasonable suspicion of criminal activity as a prerequisite for asking Erickson's permission to search the vehicle—basically expressing an approach on the part of the police of "nothing ventured, nothing gained."

The trial court issued an order granting Erickson's motion and suppressing the evidence of his drug-related activities. However, it did not make findings of fact nor did it cite any legal authority. It simply and succinctly concluded that Erickson "was unconstitutionally detained without reasonable suspicion beyond the purpose of the traffic stop." It denied the motion of the Commonwealth to alter, amend, or vacate its suppression order. This appeal followed.

■ Our standard for reviewing a court's ruling following a suppression hearing is two-fold. First, we must determine whether the trial court's findings of fact are supported by substantial evidence. We then review *de novo* its legal conclusions in applying the protections of the Fourth Amendment. RCr[2] 9.78; *Commonwealth v. Banks*, Ky., 68 S.W.3d 347 (2001), *citing Ornelas v. United States*, 517

---

**2.** Kentucky Rules of Criminal Procedure.

U.S. 690, 691, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). Since no factual matters were disputed, our only task in this case is to determine whether the trial court properly applied the law to the uncontroverted factual events.

■ A warrantless search is presumed to be unreasonable and unlawful, requiring the Commonwealth to bear the burden of justifying the search and seizure under one of the exceptions to the warrant requirement. *Cook v. Commonwealth*, Ky., 826 S.W.2d 329, 331 (1992). Consent is one of those exceptions. *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *Farmer v. Commonwealth*, Ky.App., 6 S.W.3d 144, 146 (1999). Erickson has not denied giving his consent to the search, and he has never suggested that his consent was extracted by coercion or deception. However, he argues his consent was granted in the course of an illegal detention and that, therefore, it was so tainted as to render inadmissible the evidence obtained during the search that followed.

The trial court did not cite any legal authority in its brief order suppressing the evidence. Therefore, we shall assume that it relied upon the cases argued by Erickson—particularly the Sixth Circuit case of *United States v. Mesa, supra.* The facts of *Mesa* are rather distinguishable from those in this case. In *Mesa*, the driver had been locked in the back seat of the officer's cruiser for a significant period of time before granting her consent. *Id.*, 62 F.3d at 162. The federal district court had denied her motion to suppress, and the Sixth Circuit reversed that order of denial by announcing the following *per se* rule:

> Once the purposes of the initial traffic stop were completed, there is no doubt that the officer *could not further detain* the vehicle or its occupants *unless* something that occurred during the traffic

stop generated the necessary reasonable suspicion to justify a further detention. (Emphases added.)

*Id.*

The *Mesa* reasoning was severely qualified a year later in *Ohio v. Robinette*, 519 U.S. 33, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996). *Robinette* involved facts strikingly similar to those in this case. Unlike Erickson, Robinette testified at his suppression hearing, telling the court that he did not feel that he could refuse the officer's request to search his vehicle. The Ohio Supreme Court concluded that the evidence seized from the defendant's car should have been suppressed for the following reasons: (1) the officer's questions were "not related to the purpose of the original, constitutional stop"; (2) the detention was "not based on any articulable facts giving rise to a suspicion of some separate illegal activity justifying an extension of the detention"; and (3) the officer had failed to inform Robinette that he was free to leave. *State v. Robinette*, 73 Ohio St.3d 650, 653 N.E.2d 695, 698–99 (1995).

Despite its scrupulous adherence to the *Mesa* ruling, the Ohio Supreme Court was reversed by the Supreme Court of the United States, which essentially held that a prolonged detention and request to search a detainee's car following a traffic stop was reasonable *despite* the absence of that extra "something" to generate an additional basis for reasonable suspicion of other criminal activity. Citing *Whren v. United States*, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996), the Supreme Court observed that "the subjective intentions of the officer did not make the continued detention of [Robinette] illegal under the Fourth Amendment." 519 U.S. at 38, 117 S.Ct. 417. The Court also held that the test for the legality of the continued detention was one of reasonableness.

*Id.* With respect to the issue of Robinette's consent, the Court stated:

> The Fourth Amendment test for a valid consent to search is that the consent be voluntary, and "[v]oluntariness is a question of fact to be determined from all the circumstances." The Supreme Court of Ohio having held otherwise, its judgment is reversed, and the case is remanded for further proceedings not inconsistent with this opinion. (Citations omitted.)

*Id.* 519 U.S. at 40, 117 S.Ct. 417.[3]

After the Supreme Court issued *Robinette*, the Sixth Circuit limited its *per se* rule in *Mesa* to its facts. In *United States v. Guimond*, 116 F.3d 166 (6th Cir.1997), it reversed the ruling of a federal district court that had held a driver's consent to have been invalid as a matter of law merely because he was being illegally detained. It traced the evolution of this issue from its own *Mesa* case through the qualifying ruling of *Robinette*:

> In this case, *Robinette* counsels that the validity of Guimond's consent to search the mini-van depends upon whether his consent, when considered in light of all of the circumstances surrounding the traffic stop, was truly voluntary, i.e., whether Guimond felt coerced into giving his consent. Thus, the district court's legal conclusion in this case—that the consent was invalid because it occurred during an illegal detention—is overly broad in that it applies a bright-line rule in a case implicating Fourth Amendment subtleties. Accordingly, we remand this cause to the district court in order that it may determine whether Guimond's consent was voluntary, based upon all of the cir-

cumstances surrounding the encounter between defendants and Deputy Tartera.

*Id.,* 116 F.3d at 170–171.

Erickson also referred the trial court to *United States v. Smith,* 263 F.3d 571 (6th Cir.2001), a case in which the suppression of evidence was sustained on appeal. However, as observed in *United States v. Burton,* 334 F.3d 514, 518 (6th Cir.2003), the detainee in *Smith had **refused** to consent to the search of his vehicle, severely limiting its precedential value and rendering it of little avail to Erickson.

Our review of cases following *Robinette* does not support the ruling of the trial court as to Erickson. *Burton, supra,* a recent Sixth Circuit decision, involved a legitimate traffic stop. There was no reasonable suspicion of separate criminal activity; there was consent for a search. The court held that the prolonged, continued encounter between the police officer and the motorist did *not* constitute an illegal detention for Fourth Amendment purposes. Additionally, the court held that an officer's request to search a vehicle may be entirely reasonable *even without cause* to suspect the driver or his passengers of other criminal activity.

> Questions that hold potential for detecting crime, yet create little or no inconvenience, do not turn reasonable detention into unreasonable detention. They do not signal or facilitate oppressive police tactics that may burden the public— *for all suspects (even the guilty ones) may protect themselves fully by declining to answer.* Nor do the questions forcibly invade any privacy interest or extract information without the suspects' consent. (Emphasis added.)

---

**3.** On remand, the state court found coercive elements in Robinette's encounter with the police and held: "From the totality of the circumstances, it appears that Robinette merely submitted to 'a claim of lawful authority' rather than consenting as a voluntary act of free will." *State v. Robinette,* 80 Ohio St.3d 234, 245, 685 N.E.2d 762, 771 (1997).

*Id.*, 334 F.3d at 518, *quoting United States v. Childs*, 277 F.3d 947, 954 (7th Cir.) (en banc), *cert. denied*, 537 U.S. 829, 123 S.Ct. 126, 154 L.Ed.2d 43 (2002). Thus, *Mesa* has evolved from a bright-line, *per se* rule to a highly limited fact-specific case in the wake of *Robinette*.

■ In harmony with the argument advanced by the Commonwealth throughout this litigation, *Burton* holds that where a motorist is initially stopped for a valid purpose and subsequently gives consent to a search of his vehicle, the voluntariness of his consent is the only issue to consider for purposes of the Fourth Amendment—and not whether the continued detention was justified by reasonable suspicion. *Id.* 334 F.3d at 518. Accordingly, we are compelled to agree with the Commonwealth that the McCracken Circuit Court erred in suppressing the evidence absent a specific finding that Erickson's consent was not voluntary after engaging in an analysis of all of the circumstances surrounding his encounter with Deputy Archer.

Erickson argues that the failure of the trial court to address his consent in light of the totality of the circumstances pursuant to *Robinette* does not require a reversal of the trial court's order. However, Erickson's motion was based solely on a challenge to the improperly extended detention—not on the voluntariness of his consent. And that is the only issue before us on appeal. There are no facts in the record that would have enabled the McCracken Circuit Court to analyze the nature of his consent. Therefore, we have no record to review on this issue. *Robinette* does not permit reversal on the issue of the illegal detention.

We have nonetheless examined the circumstances of this case to inquire as to indicia of voluntariness of Erickson's consent in order to prevent a manifest injustice. RCr[4] 10.26. Deputy Archer testified that his post-warning conversation with Erickson was friendly and courteous and that he had established a good rapport with Erickson. He characterized their informal chat as being more characteristic of a social encounter than a traffic stop. Erickson was not physically restrained (as was the driver in *Mesa, supra*) nor was he informed that he was suspected of a crime. Although standing near the car, the police officers made no attempt to impede the movement of the vehicle. Erickson presented no evidence that the officers engaged in intimidating or threatening behavior or that they gave any indications that would cause a reasonable person to believe that he was constrained to consent to a search.

In light of this evidence, we cannot infer the existence of coercion from the inherent nature of the encounter as Erickson urges. The current case authority dictates that the nature of Erickson's consent must be determined from the totality of the circumstances with which he was confronted.

We cannot comprehend why Erickson consented to the search—especially in view of what ultimately proved to be the incriminating state of his vehicle. Perhaps he was unaware of his right to refuse to consent to the officer's request. However, he did not present any evidence of such possible ignorance of his right to refuse as one of the factors to be considered among the overall circumstances. Regardless of Erickson's reason for consenting to the search, he did so apparently without any evidence of coercion. Pursuant to *Robinette*, Officer Archer acted properly. Therefore, we cannot find a legal basis to suppress the evidence discovered in Erickson's vehicle.

4. Kentucky Rules of Criminal Procedure.

The order of the McCracken Circuit is reversed, and the matter is remanded for trial.

ALL CONCUR.