RENDERED: FEBRUARY 22, 2007
NOT TO BE PUBLISHED

# $\mathfrak{Supreme\ Court\ of\ Kentucky}$

## FINAL

2005-SC-000831-MR

DATE 3-15-2007 EiA Growth DC.

RAYMOND FREDERICK PATTERSON                                    APPELLANT

V.
APPEAL FROM JEFFERSON CIRCUIT COURT
HONORABLE STEPHEN P. RYAN, JUDGE
INDICTMENT NOS. 03-CR-2710 AND 03-CR-3282

COMMONWEALTH OF KENTUCKY                                        APPELLEE

## MEMORANDUM OPINION OF THE COURT

## AFFIRMING

This appeal is before the Court as a matter of right. The Appellant, Raymond Frederick Patterson (Patterson), having been convicted of one count of Burglary in the First Degree, two counts of Burglary in the Third Degree and Persistent Felony Offender, for a total of twenty years imprisonment.

## I. Background

On September 11, 2003, Detective Gosney noticed Patterson outside Rascal's Bar sometime after 1:00 a.m. in the 2200 block of Frankfort Avenue. Patterson attempted to enter the bar, which appeared to be closed at the time. The detective followed him in an unmarked vehicle, while Patterson walked east along Frankfort Avenue with another man. They split up in an alley, and Detective Gosney followed Patterson west on Frankfort Avenue, but stopped at a railroad crossing. He lost sight of Patterson, but continued to search for him.

Fifteen to twenty minutes later, a police dispatcher announced that a burglar alarm had alerted police to the Weber Group, a local architecture firm on Frankfort Avenue. Detective Gosney responded to the scene, where he met other officers who advised him that they had found a broken window, blood, and a shoe print. Still suspicious of Patterson, Detective Gosney resumed looking for him.

Twenty to thirty minutes later, Detective Gosney stopped at a gas station on Brownsboro Road. While he was refueling his cruiser, he saw Patterson walk north towards a Thornton's gas station. Patterson stopped, walked behind a Rally's restaurant, and then returned a few minutes later. As Patterson approached the door of Thornton's, Detective Gosney confronted him and identified himself as a police officer. He asked Patterson where he had been, but Patterson did not respond. Detective Gosney noticed that Patterson had what appeared to be fresh cuts on his right arm and forehead, and he asked Patterson how he received those cuts. He then summoned an officer at the scene of the Weber Group burglary and verified that police had found blood at the Weber Group building, and another officer observed that the pattern of Patterson's shoe print was similar to shoe prints left at the scene.

Detective Gosney handcuffed Patterson and performed a pat down search. He noticed bulges in Patterson's front pockets, which sounded metallic. Detective Gosney asked Patterson what was in his pocket, and he suggested that the detective remove the items. Detective Gosney removed eight watches, one watchband, one bracelet, and one coin pendant. Patterson was arrested.

Officers transported Patterson to the district substation. Detective Gosney and Officer Anthony Scott searched the area around Rally's and discovered a small zippered case containing a pistol in some bushes behind the restaurant.

2

Detective Chris Horn photographed Patterson at the substation. At the time, he thought that Patterson was not under arrest, so he released him hoping to obtain more evidence which might connect him with the Weber Group burglary.

Detective Horn remained attentive to the police radio, hoping that he would learn where Patterson had stolen the watches. At about 10:00 a.m., the radio dispatcher announced a burglary at the Jones Bargain Center on Brownsboro Road. Detective Horn responded to the scene where he met the owner, Ira Jones, who explained that someone had pried open the basement door. He reported several items as stolen, including several watches and a .25 caliber German pistol in a suede case.

Officers showed Jones the watches they had taken from Patterson and the gun found in the bushes behind Rally's; Jones identified them as those stolen from the Jones Bargain Center.

On September 15, 2003, Detective Horn and Detective Brian Walker arrested Patterson and charged him with burglary in the third degree (Weber Group) and burglary in the first degree (Jones Bargain Center). He apparently made bond.

On or about October 21, 2003, someone broke into the James Fruit Market on Frankfort Avenue and stole approximately $6 and a jacket. The burglar was caught on surveillance video; upon viewing the tape, Detective Walker recognized the burglar as Patterson.

On October 29, 2003, Detective Walker and Detective Horn drove to Patterson's residence, where they left a business card and asked Patterson to come to the station and speak with them. Later that day, Patterson called and agreed to come to the station with an attorney, but did not appear. A warrant was obtained and he was arrested later that evening.

Patterson was subsequently convicted of one count of burglary in the first degree and two counts of burglary in the third degree. The jury also found Patterson guilty of being a persistent felony offender in the first degree (PFO1). His sentence was fixed at ten years for the burglary in the first degree, enhanced to twenty by the PFO1 and one year for each count of burglary in the third degree, enhanced to ten years for each count by PFO1. Following his trial, Patterson entered into a conditional guilty plea pursuant to RCr 8.09 and North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160. (1970), to possession of a handgun by a convicted felon. The court sentenced him to ten years on that count. The court ordered that the sentences on possession of a firearm by a convicted felon, first-degree burglary and third-degree burglary convictions were to run concurrent for a total sentence of twenty years. Patterson appeals these convictions as a matter of right. Ky Const. Sec. 110(2)(b).

## II. Analysis

Patterson raises several issues in this appeal: the denial of his motion to sever his burglary charges; the trial court's failure to suppress evidence; the trial court's admission of evidence that had not been provided in pre-trial discovery; the trial court's denial of Patterson's motion for a mistrial or an admonition to the jury; and the trial court's instructions to the jury.

### A. Joinder of Charges

Patterson argues that the three burglary charges should have been severed for trial. "A conviction resulting from a trial in which a motion [to sever the trials] has been denied will be reversed on appeal only if the refusal of the trial court to grant such a severance is found to amount to a clear abuse of discretion and prejudice to the

4

defendant is positively shown." Spencer v. Commonwealth. 554 S.W.2d 355, 377 (Ky. 1977). Additionally, RCr 6.18 states the relevant rule:

> Two or more offenses may be charged in the same complaint of two or more offenses whether felonies or misdemeanors, or both, may be charged in the same indictment or information in a separate count for each offense, if the offenses are of the same or similar character or are based on the same acts or transactions connected together or constituting parts of a common scheme or plan.

Patterson argues that although the robberies all occurred at night, they involved different types of businesses and different methods of entry, and that the James Fruit Market burglary occurred a month later and involved a different lead investigator.

Despite some minor differences, the burglaries are clearly of "the same or similar character." All of the burglaries took place after hours at commercial businesses. The Weber Group burglary and the James Fruit Market burglary were committed on the same street, within the same block. The Weber Group burglary and the Jones Bargain Center burglary occurred on the same day. Given these substantive connections and similarities between the three burglaries, the charges were properly joined under RCr 6.18.

## B. Suppression Issue

A protective search for weapons is permissible during the course of an investigative stop when the police officer has a reasonable belief that the person may be armed and dangerous. Patterson concedes this point, but argues that Detective Gosney lacked the sufficient "reasonable suspicion" to perform a pat down for weapons. Terry v. Ohio, 393 U.S. 1, 88 S.Ct. 1868 (1968).

At the suppression hearing held on the first day of trial, Detective Gosney testified that he suspected Patterson of committing a series of burglaries; that he saw Patterson a short distance from the Weber Group burglary; that he knew that officers

5

had found blood and a shoe print at the scene; that Patterson had fresh cuts on his arms and forehead; and that Patterson's shoe print looked similar to a shoe print found at the scene. Terry specifies that a protective search for weapons is only permissible during the course of an investigative stop when the police officer has a reasonable belief that the person may be armed and dangerous. 392 U.S. at 30-31, 88 S.Ct. at 1884-85. Given the information that Detective Gosney had, he could reasonably suspect Patterson of being armed, thus giving him the right to do the pat down search under Terry. While performing the pat down search, Detective Gosney felt the bulge in Patterson's pocket, and Patterson actually invited him to reach in and take out what was in his pockets. This is when the watches were discovered. Not only did Detective Gosney act properly in performing the pat down search, Patterson also gave his consent to a search of his pockets. "The Fourth Amendment test for a valid consent to search is that the consent be voluntary...." Commonwealth v. Erikson, 132 S.W.3d 884, 888 (Ky. App. 2004). Patterson has not denied that he gave his consent and has not suggested that his consent was extracted by coercion or deception. The motion to suppress was properly denied.

### C. Admitting Evidence Not Provided in Pre-Trial Discovery

Patterson alleges that the trial court improperly permitted the Commonwealth to introduce evidence that had not been provided in pre-trial discovery: blood samples, a shoe, and test firing of the gun.

### i. Blood and Shoe Evidence

The Commonwealth claims that the issue about the blood and shoe has not been preserved because there is no record of the trial court's ruling. Before this Court addresses whether the evidence was properly admitted, it must first determine whether

6

the issue has been sufficiently preserved for appellate review. A motion in limine resolved by an order of record is sufficient to preserve error for appellate review. KRE 103(d)(2); see also Lanham v. Commonwealth, 171 S.W.3d 14, 20 (Ky. 2005). On June 4, 2004, Patterson filed a discovery motion seeking, among other things, the report of the Evidence Technician Unit (ETU). At a pre-trial hearing on June 7, 2004, Patterson's counsel mentioned that the ETU was possibly missing from the discovery materials. On the morning of trial, May 11, 2005, Patterson orally moved to suppress the blood swabs collected at the scene of the Weber Group burglary and from his shoe, arguing that he had still not been provided with the ETU report. Patterson argued that the information provided in discovery did not disclose whether the blood that was found at the Weber Group was inside or outside of the building, did not reveal who collected the shoe, and did not reveal who performed the testing. His primary objection, however, was with the lack of disclosure of who collected the blood at the scene of the Weber Group burglary. The prosecutor then discovered in the file that ETU technician Jennifer Rehm had collected the blood and immediately disclosed this information. Patterson claims that, at trial, he contemporaneously objected to the admissibility of the ETU report and that the trial court overruled this objection.

The Commonwealth argues that the portions of the tape regarding the court's ruling are silent and that Patterson's argument is not preserved because neither a bystander bill, CR 75.14, nor a narrative statement, CR 75.13, were filed. A review of the tape reveals that the record is in fact not silent and that the judge's ruling on Patterson's motion is clearly audible. This error is probably the result of a malfunction in the copying of the tape for the Commonwealth. Had the Commonwealth listened to the original tapes, it would have discovered this error. The issue having been adequately

7

preserved, the Court must determine whether the trial court improperly admitted evidence that had not been provided in pre-trial discovery.

Patterson claims that the Commonwealth failed to produce a report from the ETU. Defense counsel noted in a pre-trial conference that she believed a report from the ETU was missing concerning the collection of blood at one of the scenes. Though the prosecutor assured defense counsel that they would review the file and provide the information, it still had not been provided by the day of trial. On May 11, 2005, defense counsel moved to suppress the blood swabs collected at the Weber Group and the shoe taken from Patterson because the Commonwealth had repeatedly failed to turn over the ETU report concerning the location and collection of this evidence. During this same hearing, the Commonwealth finally provided several pieces of discovery not previously provided, including the ETU report.

The trial court denied the motion to suppress and indicated to Patterson that it would give him the opportunity to speak with Technician Rehm before she testified. Defense counsel then objected to the admission of the blood and shoe evidence because the Commonwealth had not complied with pre-trial discovery rules. During Rehm's trial testimony, defense counsel renewed her objection to the admission of the blood and shoe evidence. The Commonwealth argued that appropriate remedial measures had been taken by turning over the ETU report and by permitting defense counsel to interview Rehm prior to her testimony. The trial court overruled the objection and permitted the Commonwealth to introduce the evidence.

The trial court did not abuse its discretion in admitting the blood and shoe evidence considering that it was produced in advance of the testimony by the ETU expert and the trial court allowed the defense attorney to speak with the ETU witness

before she testified. There was ample opportunity to cross examine the witness or to move for a continuance if one were needed to challenge the evidence. This clearly comports with RCr 7.24(9), which states:

> If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or an order issued pursuant thereto, the court may direct such party to permit the discovery or inspection of materials not previously disclosed, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may enter such other order as may be just under the circumstances.

As Patterson concedes in his brief, "a discovery violation justifies setting aside a conviction 'only where there exists a reasonable probability that had the evidence been disclosed the result at trial would have been different.'" Weaver v. Commonwealth, 955 S.W.2d 722, 725 (Ky. 1997) (quoting Wood v. Bartholomew, 516 U.S. 1, 5, 116 S.Ct. 7, 10, (1995)). In this case, there was substantial evidence against Patterson. He had fresh cuts, was in possession of watches and jewelry obtained from the Jones Bargain Center, and was caught on video breaking into the James Fruit Market. It is unlikely that having early possession of an ETU report would have appreciably changed the outcome of Patterson's trial. The Commonwealth argues that Patterson's trial counsel had the evidence needed to prepare for trial. Defense counsel acknowledges she had a copy of the DNA report which showed that samples taken at the Weber Group matched those taken from Patterson, the defense was aware that Jennifer Rehm was to be called as a witness, and they acknowledge that an evidence property slip identified Rehm as the person who had deposited the evidence. The only thing missing at pre-trial was the ETU report, and the trial court properly remedied that by giving the defense an opportunity to interview Rehm prior to her testimony.

9

### ii. Test Firing of the Gun

During Detective Chris Horn's testimony, the prosecutor asked if the detective had checked to see if the gun found in the bushes at the Rally's restaurant was operational. Defense counsel objected, stating that the Commonwealth had not provided these test results in pre-trial discovery. The prosecutor argued it was just testimony, not real test results, and that the detective could discuss the actions he took. The court ruled that the Commonwealth could ask if the gun was operational.

Patterson argues that the test firing of the gun constituted a scientific test or experiment to determine whether it was operational, and as such, should have been excluded since the defense did not have access to the test results.

The trial court did not abuse its discretion in allowing testimony that the gun was operational. Since showing that the gun was operational and thus a deadly weapon was necessary to prove burglary in the first degree, KRS 511.020(1)(a), it was predictable that the gun would be fired. The question is whether failing to disclose in pre-trial discovery that it had been fired and was operational is error sufficient to justify setting aside a conviction. Here, pre-trial disclosure would have made a difference only if the gun was not operational. Disclosing that it was operational would not have caused the result at trial to be different. Patterson never requested to test fire the gun. Thus the trial court's admission of the testimony is not error.

### D. Mistrial and Admonishment

The trial judge properly overruled Patterson's motion for a mistrial and admonition. On the morning of trial, Patterson's counsel made an oral motion in limine to preclude the prosecutor from introducing evidence that the police suspected him of committing a "string of burglaries." The prosecutor wanted to introduce evidence that

10

Patterson was "under surveillance" and that there had been a "rash of other burglaries in the area." The trial judge ruled that the prosecutor could introduce evidence that Patterson was "under surveillance." During the trial, Detective Gosney testified that on this particular evening, he was on burglary detail in the Brownsboro Road area. When asked what his duties were with respect to the detail, Detective Gosney stated that they had a target individual and that if they could surveil him, they were to bring him in. When asked who this target individual was, Detective Gosney replied, "Raymond Patterson." Patterson's counsel objected and approached the bench. Patterson asked for a mistrial based on his belief that Detective Gosney's testimony had implied that Patterson was a suspect in other burglaries. The trial court found no grounds for a mistrial, but instructed the Commonwealth to move on and to avoid this topic. Defense counsel then requested an admonition to the jury, but admitted that it was not sure what to tell them. The trial judge stated he did not believe a line had been crossed and that an admonition would only bring more attention to the testimony. The court overruled Patterson's request for an admonition, but instructed the Commonwealth to "proceed with caution."

The granting of a mistrial is discretionary with the trial judge. Chapman v. Richardson, 740 S.W.2d 929 (Ky. 1987). Absent an abuse of discretion, an appellate court will not disturb the ruling of the trial court. Furthermore, a mistrial is appropriate only where the record reveals "a manifest necessity for such action or an urgent or real necessity." Bray v. Commonwealth, 68 S.W.3d 375, 383 (Ky. 2002) (citing Clay v. Commonwealth, 867 S.W.2d 200, 204 (Ky. App. 1993)). Detective Gosney's testimony was necessary to explain why the officers approached Patterson in the first place. Clearly, officers may testify to information that explains the action they took. Daniel v.

11

Commonwealth, 905 S.W.2d 76, 79 (Ky.1995). The trial court properly denied Patterson's requests for a mistrial and an admonition.

## E. Jury Instructions

Patterson alleges that the trial court failed to give proper jury instructions, specifically, that the court improperly instructed the jury on Patterson's right to remain silent and also improperly instructed the jury in a manner consistent with the presumption of innocence and burden of proof. In the instructions, the last paragraph of Instruction No.5–Presumption of Innocence reads as follows: "The defendant is not compelled to testify, and the fact that he does not cannot be used as an inference of guilt and should not prejudice him in any way." (emphasis added). Patterson requested that the language in the instruction be changed from "should" to "shall." Patterson argues that "shall" is the language required by RCr 9.54(3).[1]

This court believes that there is no significant difference between "shall" and "should" in this particular instance. The given instruction mirrors the model instruction set forth in 1 Cooper, Kentucky Instructions to Juries (Criminal) § 2.04A (1999). Furthermore, the word "should" has been utilized in various trials and quoted by this court in published opinions. See, e.g.,Ragland v. Commonwealth, 191 S.W.3d 569, 591 (Ky. 2006) and Commonwealth v. Hager, 41 S.W.3d 828 (Ky. 2001). The language in RCr 9.54(3) is not mandatory. It explicitly states that the tendered instruction use wording that is "to the effect" of the rule. We believe that the instruction given in this instance satisfies that requirement.

---

[1] "The instructions shall not make any reference to a defendant's failure to testify unless so requested by the defendant, in which event the court shall give an instruction to the effect that a defendant is not compelled to testify and that the jury shall not draw any inference of guilt from the defendant's election not to testify and shall not allow it to prejudice the defendant in any way." RCr 9.54(3).

12

The instruction given with regard to the innocence and burden of proof stated that the jury would find him "guilty...if, and only if, you believe from the evidence beyond a reasonable doubt all of the following...." Defense counsel submitted instructions that state, "You will find the defendant, Raymond Patterson, not guilty, under this instruction unless you believe from the evidence alone and beyond a reasonable doubt all of the following...." Patterson argues that his submitted instructions are more in line with the presumption of innocence.

The constitutionality of the trial court's given instructions was affirmed in Carter v. Kentucky, 450 U.S. 288, 101 S.Ct.1112, 67 L.Ed.2d 241 (1981). In Carter, the trial judge refused a defendant's request to instruct the jury that "[t]he defendant is not compelled to testify and the fact that he does not cannot be used as an inference of guilt and should not prejudice him in any way." Id. at 289. The judge is required to give such an instruction, when requested by the defendant, and the given instruction must "minimize the danger that the jury will give evidentiary weight to a defendant's failure to testify." Id. at 305. Carter does not require, however, that the trial court use the exact language proposed by the defendant.

To presume that a jury would be led to believe that it is Patterson's burden to prove his innocence based on the wording of the given instructions is not persuasive. As the Court of Appeals ruled in Patterson v. Commonwealth, 630 S.W.2d 73, 75 (Ky. App. 1982),

> it is entirely unreasonable to believe that a jury, without the benefit of a burden of proof instruction, could conclude other than that it is for the Commonwealth to bear this obligation. It is clearly evident through the presumption of innocence and reasonable doubt instructions upon where the burden lies without the need for a specific separate instruction.

13

We agree. It is always made clear to a jury who has the burden of proof and the instructions given in this case would not likely make a jury think otherwise. The jury was properly instructed on both counts.

For the above stated reasons, the judgment of the Jefferson Circuit Court is affirmed.

Lambert, C.J.; Cunningham, Minton, Noble, Schroder and Scott, JJ., concur. McAnulty, J., concurs in result only.

14

**COUNSEL FOR APPELLANT:**

Elizabeth B. McMahon
Assistant Public Defender
Office of the Jefferson District Public Defender
200 Advocacy Plaza
717-719 West Jefferson Street
Louisville, Kentucky 40202


**COUNSEL FOR APPELLEE:**

Gregory D. Stumbo
Attorney General

Perry T. Ryan
Assistant Attorney General
Office of Attorney General
Criminal Appellate Division
1024 Capital Center Drive
Frankfort, Kentucky 40601-8204