NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0374n.06

Case No. 09-1535

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

**Jun 02, 2011**

LEONARD GREEN, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| LEONEL AGUILERA-PENA, | ) | DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| _____ | ) | |

BEFORE:  BATCHELDER, Chief Judge; MARTIN and SUTTON, Circuit Judges.

ALICE M. BATCHELDER, Chief Judge. Leonel Aguilera-Pena ("Pena") brings this appeal challenging the district court's denial of his motion to suppress. For the following reasons, we AFFIRM.

I.

In November 2007, Defendant-Appellant Pena was stopped by Corporal Donald Smith of the Romulus, Michigan, Police Department after Smith observed Pena engage in improper lane use. Smith had been asked to conduct the traffic stop by federal agents, who had been observing Pena for several days and had reason to believe he was engaged in narcotics trafficking.

During the stop, Smith requested Pena's driver's license and asked him several questions, including: (1) if Smith should know about anything inside the vehicle, (2) if there was any marijuana or cocaine in the vehicle, and (3) whether there were any large sums of money in the car. Pena

answered "no" to each question, and, at some point, stopped maintaining eye contact, leading Smith to believe Pena was lying. Smith then asked if he could search the car, and Pena consented.

Corporal Smith ordered Pena to exit the vehicle, patted him down for weapons, and searched the trunk and interior of the vehicle. During the search, and only three to five minutes after Smith initially pulled Pena over, Federal Agent McCanna arrived,[1] and Smith turned Pena over to him. Smith continued searching, and McCanna asked Pena if Smith would find anything in the car. Pena responded that there could be something illegal in his car, although he was not certain what it would be. Upon further questioning, Pena admitted that he had been paid $5,000 to drive the car round trip from Oregon to Detroit and back. At this point, approximately six minutes had passed since Pena had been stopped.

Based on his training and experience, McCanna knew that it was a common practice for drug couriers to be paid large sums of cash without being told exactly what they are transporting. He concluded that he had probable cause to believe Pena's vehicle contained contraband. For safety reasons, McCanna had the car taken to the Romulus Public Works garage, a short distance from where the stop occurred, for a more comprehensive search. He detained Pena and placed him in the front passenger seat of the unmarked police car to ride with him to the garage. At the garage, a dog alerted positively to the car around the center console, and agents located a hidden compartment containing about $410,000; 175 grams of heroin; and a Colt semi-automatic handgun. Pena was then arrested.

---

[1]At oral argument, Pena asserted for the first time that McCanna arrived after Smith had completed the search. The district court found that McCanna arrived during the search. This finding is adequately supported by the record.

Pena was charged with one count of possession with intent to distribute heroin in violation of 21 U.S.C. § 841(a)(1). He filed a motion to suppress the evidence seized in connection with his arrest, which was denied by the district court following an evidentiary hearing. Subsequently, Pena entered a plea agreement allowing him to challenge the denial of his motion to suppress. He was sentenced to 60 months in prison—the statutory minimum. This timely appeal followed.

## II.

This court reviews under a mixed standard the denial of a motion to suppress. Factual findings we review for clear error; conclusions of law we review *de novo*. *United States v. Burton*, 334 F.3d 514, 516 (6th Cir. 2003). When a district court has denied a motion to suppress, we consider the evidence in the light most favorable to the government. *United States v. Long*, 464 F.3d 569, 572 (6th Cir. 2006).

"Stopping and detaining a motorist constitutes a seizure within the meaning of the Fourth Amendment even if the purpose of the stop is limited and the resulting detention quite brief." *United States v. Bell*, 555 F.3d 535, 539 (6th Cir. 2009) (internal quotation marks omitted). The Fourth Amendment permits an officer who has probable cause to believe that a traffic violation is occurring to detain the automobile, regardless of the officer's subjective motivation for the stop. *Whren v. United States*, 517 U.S. 806, 812-13 (1996). "To detain the motorist any longer than is reasonably necessary to issue the traffic citation, however, the officer must have reasonable suspicion that the individual has engaged in more extensive criminal conduct." *United States v. Townsend*, 305 F.3d 537, 541 (6th Cir. 2002).

3

A law enforcement officer does not violate the Fourth Amendment merely by asking a detained motorist extraneous questions so long as those questions do not unnecessarily prolong the detention, and the detainee's responses are voluntary and not coerced. *See United States v. Everett*, 601 F.3d 484, 496 (6th Cir. 2010); *see also Arizona v. Johnson*, 129 S.Ct. 781, 788 (2009) ("An officer's inquiries into matters unrelated to the justification for the traffic stop . . . do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop."). Under those circumstances, the "extraneous questions are a Fourth Amendment nullity." *Everett*, 601 F.3d at 496. Similarly, asking a detained motorist for consent to search his vehicle does not necessarily turn a reasonable traffic stop into an unreasonable one. *Ohio v. Robinette*, 519 U.S. 33, 39 (1996) (holding that asking a detained motorist whether he would consent to a search of his automobile for contraband, even after he had produced a valid driver's license, did not necessarily make the traffic stop unreasonable in scope or duration); *Burton*, 334 F.3d at 518-19 (same).

Pena argues that this court's decision in *United States v. Mesa*, 62 F.3d 159, 162 (6th Cir. 1995), controls. In *Mesa*, we stated that "[o]nce the purposes of the initial traffic stop were completed . . . the officer could not further detain the vehicle or its occupants unless something that occurred during the traffic stop generated the necessary reasonable suspicion to justify a further detention." Unfortunately for Pena, "[t]he *Mesa* court's statement . . . no longer accurately represents the law." *Burton*, 334 F.3d at 517. Instead, *Robinette*, *Burton*, and *Everett* provide the legal framework under which this case must be analyzed.

Pena does not claim that the traffic stop was unconstitutional. Nor does he argue that the continued detention following his admission that the vehicle might contain contraband was unconstitutional. He argues that the extraneous questions asked by Smith and McCanna exceeded the scope of the traffic stop and/or unnecessarily prolonged the stop. His argument fails.

Here, as in *Burton*, the officer asked only a handful of questions, and Pena consented to the search of his automobile approximately two minutes after being stopped. *See id*. at 518. The record provides no reason to suspect that the questions were unusually intrusive or that asking them made this traffic stop any more coercive than a typical traffic stop. Nor does the record provide any evidence that the questions or the search unnecessarily prolonged the detention, which lasted only six minutes. This is especially true because Agent McCanna's questions occurred simultaneously with Smith's search of the vehicle. *Cf. Illinois v. Caballes*, 543 U.S. 405, 408-09 (2005) (officers did not unconstitutionally extend detention by conducting a dog sniff while another officer was writing a warning ticket); *Bell*, 555 F.3d at 543 ("[W]e simply cannot conclude that an officer violates the Fourth Amendment merely by asking a driver to exit a vehicle to effect a dog sniff when doing so does not extend the duration of the stop and does not cause the officer unreasonably to deviate from the purpose of the initial stop.").

Once the initial stop was lawfully completed, the extraneous questions were appropriate, as was the request for consent to search the car. *See Burton*, 334 F.3d at 518-19. No reasonable suspicion or probable cause beyond that necessary for the initial traffic stop was required for the extraneous questions. *See id*. Pena's own statements, made within minutes of a traffic stop that

Pena does not even claim was unlawful, gave the officers probable cause to further detain Pena. We therefore conclude that the scope and duration of the traffic stop were reasonable in this case.

## III.

For the foregoing reasons, we **AFFIRM** the district court's denial of Pena's motion to suppress.