NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0224n.06

No. 10-6559

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

**Feb 24, 2012**

LEONARD GREEN, Clerk

UNITED STATES,

       Plaintiff-Appellee,

v.

DONNIE JUSTICE,

       Defendant-Appellant.

_____/

**On Appeal from the United States District
Court for the Eastern District of Kentucky**

BEFORE:    MERRITT and COOK, Circuit Judges; and COX, District Judge.[*]

      **COX, District Judge**.

      Appellant Donnie Justice pleaded guilty to conspiring to distribute controlled substances and to possessing firearms in furtherance of drug trafficking crimes. Justice now appeals his conviction, alleging that the district court erred by denying his motion to suppress evidence that was seized during a search of both his vehicle and motel room. The panel unanimously agrees that oral argument is not needed. FED. R. APP. P. 34(a). For the following reasons, we affirm the district court's judgment.

_____

      [*]The Honorable Sean F. Cox, United States District Court Judge for the Eastern District of Michigan, sitting by designation.

I.

In April 2009, Justice's estranged wife contacted the Maysville Police Department and notified police officers that Justice was driving a pickup truck with expired registration, was in possession of firearms, and that he had been dealing in narcotics. She further advised the officers that Justice was staying at the Riggs Motel in Maysville, Kentucky.

Approximately two weeks later, on April 27, 2009, Agent Tim Fegan observed Justice traveling in his pickup truck across the expressway that connects Aberdeen, Ohio and Maysville, Kentucky. Agent Fegan radioed Detective Michael Palmer, who was in an unmarked police vehicle, and notified him that Justice was entering into Maysville. Detective Palmer subsequently observed Justice traveling east in his pickup truck on Forest Avenue in Maysville, Kentucky. Detective Palmer contacted police dispatch and requested that they run the license plate number on Justice's vehicle. As he followed Justice into the parking lot of the Riggs Motel, dispatch notified Detective Palmer that there was no registration record on file for Justice's vehicle. Justice parked his vehicle and Detective Palmer pulled up behind him without activating his lights or siren. Detective Palmer parked his vehicle behind Justice's vehicle in such a way that Justice was blocked from backing out of the parking lot.

Detective Palmer, who was dressed in plain clothes, then exited his vehicle and approached Justice's vehicle. Detective Palmer notified Justice that he stopped him because his vehicle was not properly registered. Justice stated to Detective Palmer that he had just registered his vehicle in Ohio. Detective Palmer asked Justice for his license, insurance, and documentation relating to the recent

2

registration. Justice produced all the relevant documentation requested. Detective Palmer then asked Justice for consent to search his vehicle. Without hesitation, Justice stated that he had nothing in his car and that Detective Palmer could search his vehicle. During the conversation with Justice, Detective Palmer also referenced a prior, unrelated run-in that Justice had with police officers during which Justice was suspected of possessing a firearm.

As Detective Palmer and Justice were reviewing his registration documents, Officer Hord, Detective Ken Fuller, and Agent Fegan arrived at the scene, and Detective Palmer notified them that Justice had consented to a search. At some point, Detective Palmer contacted the Aberdeen Police Department in order to confirm whether Justice did, in fact, register his vehicle that day. Meanwhile, Detective Fuller and Agent Fegan began to search the vehicle. As a result of the search of the vehicle, the officers recovered short-cut straws which contained a white residue and a round of ammunition. Meanwhile, a woman named Robin Wagner, Justice's live-in girlfriend, exited one of the motel rooms and inquired as to what was occurring. Agent Fegan began speaking to Wagner, who confirmed to Agent Fegan that the room she exited was Justice's room. After conversing with Wagner for a few moments, Agent Fegan noticed some marijuana on the hood of Justice's pickup truck and pills on the ground near where Wagner was standing.

Agent Fegan then advised Justice and Wagner of their *Miranda* rights, but did not place either under arrest at that time. Agent Fegan asked Wagner, "Is there anything else I need to know about that's [sic] in the room?," to which she replied, "I don't care, it's not my room, you would have to ask Donnie." Detective Fuller asked Justice for consent to search his motel room, but

3

received no response. Agent Fegan subsequently stated to Justice that they believed they had probable cause to obtain a search warrant for the room and that they were going to proceed with doing so. Agent Fegan again asked Justice for consent to search the room, and Justice orally consented to the search.

The officers searched Justice's motel room and recovered two firearms. At no point during the search did Justice revoke consent. While the officers searched the room, the officers permitted Justice to walk in and out of the motel room. Agent Fegan stated that Justice was cooperative until the officers discovered the firearms, at which time the officers placed Justice and Wagner under arrest. Approximately seventy-five minutes passed between the time Detective Palmer stopped Justice and the time of Justice's arrest.

On August 12, 2010, Justice moved to suppress the evidence seized during the searches of his vehicle and motel room. On August 23, 2010, the district court held an evidentiary hearing on Justice's motion to suppress. After hearing testimony from Detective Palmer and Agent Fegan, the district court denied Justice's motion to suppress. On August 24, 2010, the district court issued a Memorandum Opinion in which it found that Detective Palmer had reasonable suspicion that Justice committed a traffic violation and that Justice was engaged in criminal conduct at the time Detective Palmer stopped Justice. The district court also found that Justice freely and voluntarily gave the officers consent to search his vehicle and his motel room.

II.

In reviewing the denial of a motion to suppress evidence, we review the district court's findings of fact for clear error and its conclusions of law *de novo*. *United States v. Gross,* 550 F.3d 578, 582 (6th Cir. 2008). A factual finding is clearly erroneous when the reviewing court is left with a definite and firm conviction that a mistake has been committed. *United States v. Smith*, 594 F.3d 530, 535 (6th Cir. 2010). "In reviewing the district court's findings of fact, we consider evidence in the light most favorable to the government." *United States v. Hill*, 195 F.3d 258, 264 (6th Cir. 1999). "In addition, we must give deference to the district court's assessment of credibility inasmuch as the court was in the best position to make such a determination." *Id.* at 264-65.

III.

**A.      Detective Palmer had probable cause to stop Justice.**

"Stopping and detaining a motorist constitutes a seizure within the meaning of the Fourth Amendment even if the purpose of the stop is limited and the resulting detention quite brief." *United States v. Bell*, 555 F.3d 535, 539 (6th Cir. 2009) (internal quotation marks and alterations omitted). "An ordinary traffic stop, however, is more akin to an investigative detention rather than a custodial arrest, and the principles announced in *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L.Ed.2d 889 (1968), apply to define the scope of reasonable police conduct." *Hill*, 195 F.3d at 264. "In evaluating the constitutionality of a *Terry* stop, we engage in a two-part analysis of the reasonableness of the stop." *United States v. Davis*, 430 F.3d 345, 354 (6th Cir. 2005). "We first ask 'whether there was a proper basis for the stop, which is judged by examining whether the law

5

enforcement officials were aware of specific and articulable facts which gave rise to reasonable suspicion.'" *Id*. (quoting *United States v. Garza*, 10 F.3d 1241, 1245 (6th Cir. 1993)).  Second, "we must determine 'whether the degree of intrusion ... was reasonably related in scope to the situation at hand, which is judged by examining the reasonableness of the officials' conduct given their suspicions and the surrounding circumstances.'" *Id*. (quoting *Garza*, 10 F.3d at 1245).

Although *Terry* stops are governed under the reasonable suspicion standard, we have previously held that traffic stops for civil traffic violations are governed by the probable cause standard. *See United States v. Sanford*, 476 F.3d 391, 394 (6th Cir. 2007).  A police officer may lawfully stop a vehicle when he has probable cause to believe that a civil traffic violation has occurred. *Id.* (quoting *Gaddis v. Redford Twp.*, 364 F.3d 763, 770 (6th Cir. 2004)).  "Probable cause is a reasonable ground for belief supported by less than prima facie proof but more than mere suspicion." *United States v. Blair*, 524 F.3d 740, 748 (6th Cir. 2008).

With regard to the first part of our analysis, Justice first contends that the stop, and subsequent search of his vehicle, were unlawful because the officers' true intent was to investigate alleged drug and firearm crimes.  In *Whren v. United States*, the Supreme Court foreclosed such attacks on the constitutionality of traffic stops despite a police officer's ulterior motives. *See Whren v. United States*, 517 U.S. 806, 813 (1996).   "When a traffic stop is supported by probable cause, an officer's subjective intent is irrelevant." *Blair*, 524 F.3d at 748.

Here, Detective Palmer had probable cause to stop Justice because he had reliable information from which to believe that Justice was driving an unregistered vehicle.[1]  Two weeks prior to Justice's arrest, officers received information from Justice's estranged wife that he was driving an unregistered pickup truck, that he had been dealing drugs, and that he was in possession of firearms.  The information regarding Justice's vehicle registration was corroborated when Detective Palmer ran the plate on Justice's vehicle and dispatch notified him that there was no record of Justice's vehicle.  Once Detective Palmer discovered that there was no registration record for Justice's vehicle, he had probable cause that Justice was committing a traffic violation.  Detective Palmer's initial stop was therefore lawful.

## B.      Justice voluntarily consented to the search of his vehicle.

The officers' search of Justice's vehicle is the focus of the second part of our inquiry.  When the government asserts that a search is justified as a result of a defendant's consent to search, the government must show that the consent was "unequivocal, specific, and intelligently given, uncontaminated by any duress and coercion." *United States v. Williams*, 754 F.2d 672, 674–75 (6th Cir. 1985).  The Court determines the voluntariness of a consent to search by considering the totality of the circumstances.  *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973).  Factors to consider

---

[1]In his brief, Justice ignores the possibility that his unregistered vehicle created probable cause to execute a traffic stop.  Rather, Justice focuses on the information from Justice's estranged wife as the sole source of the officers' probable cause.  The district court, however, held that "[a]t the time Detective Palmer approached Defendant Justice, he had probable cause to believe that a traffic violation had occurred and reasonable suspicion that the Defendant was engaged in criminal conduct."

include "the age, intelligence, and education of the individual; whether the individual understands the right to refuse to consent; whether the individual understands his or her constitutional rights; the length and nature of detention; and the use of coercive or punishing conduct by the police." *United States v. Worley*, 193 F.3d 380, 386 (6th Cir. 1999) (internal quotation marks and citations omitted).

Justice contends that reasonable suspicion dissipated after he presented his registration documents and his consent was coerced because he was not free to leave. These arguments fail. In *Ohio v. Robinette*, 519 U.S. 33, 39 (1996), the Supreme Court found that asking a detained motorist for consent to search his vehicle, even after producing a valid driver's license, did not turn a lawful traffic stop into an unreasonable one. We have also consistently held that "[a] law enforcement officer does not violate the Fourth Amendment merely by asking a detained motorist extraneous questions so long as those questions do not unnecessarily prolong the detention, and the detainee's responses are voluntary and not coerced." *United States v. Aguilera-Pena*, 426 F. App'x. 368, 370 (6th Cir. 2011) (citing *United States v. Everett*, 601 F.3d 484, 496 (6th Cir. 2010)); *See also United States v. Burton*, 334 F.3d 514 (6th Cir. 2003) (holding that an officer's request to search a defendant's vehicle after a traffic stop, even after being presented with a valid driver's license, was reasonable and not overly intrusive.).

In *Aguilera-Pena*, an officer, suspecting that the defendant was involved in drug trafficking, stopped the defendant for improper lane use. *Aguilera-Pena*, 426 F. App'x. at 369. During the traffic stop, the officer asked the defendant if he could search his vehicle, and the defendant agreed. Relying on *Robinette*, *Burton*, and *Everett*, we rejected the notion that an officer could not further

detain a driver of a vehicle unless something that occurred during the traffic stop created a reasonable suspicion, beyond that which initiated the stop, to further justify detention. *Id*. at 370.

In this case, Detective Palmer did not unreasonably extend the duration and scope of the traffic stop by asking Justice for consent to search his vehicle. Detective Palmer had reason to believe that Justice was driving an unregistered vehicle because there was no record of registration for Justice's vehicle. While Detective Palmer and Justice were discussing his registration documents, Detective Palmer asked for consent to search Justice's vehicle and Justice agreed without hesitation. Justice's consent was an unequivocal and specific statement. The fact that Justice ultimately presented valid registration documents is irrelevant, and in any event, did not require Detective Palmer to end his inquiry. Detective Palmer was justified in further detaining Justice in order to determine whether the registration documents were legitimate. Within minutes of Justice giving Detective Palmer consent to search, the other officers arrived and began searching Justice's vehicle. Justice was also cooperative throughout Detective Palmer's inquiry and was not pressured, coerced, or under duress at the time Detective Palmer asked for consent to search.

Requesting consent to search Justice's vehicle, and the search that ensued, did not unreasonably prolong the lawful stop. In viewing the totality of the circumstances, and viewing the evidence in a light most favorable to the government, Justice freely and voluntarily gave Detective Palmer consent to search his vehicle after Detective Palmer conducted a lawful traffic stop.

**C.      Justice's consent to search his motel room was voluntary.**

Having determined that the traffic stop was lawful and that Justice gave voluntary consent to search his vehicle, the Court must now determine if Justice's consent to search his motel room was voluntary. Justice contends that his consent was not voluntary because he was detained by the officers, Agent Fegan made threats of obtaining a search warrant, and the officers did not notify Justice of his right to leave or deny consent. The government, however, asserts that Justice was never detained and freely consented to the search of his motel room.

As stated above, the government bears the burden of establishing that a defendant's consent to search is voluntary. Contrary to the government's position, Justice was, in fact, detained by the officers as a result of a *Terry* stop. Justice, however, had not yet been arrested by the officers before they obtained consent to search the motel room. As explained above, "[a]n ordinary traffic stop . . . is more akin to an investigative detention rather than a custodial arrest." *Davis*, 430 F.3d at 353. Additionally, the fact the Agent Fegan read Justice his *Miranda* rights does not necessarily mean that Justice was in the custody of the officers. *See United States v. Lewis*, 556 F.2d 446, 449 (6th Cir. 1977) ("The precaution of giving *Miranda* rights in what is thought could be a non-custodial interview should not be deterred by interpreting the giving of such rights as a restraint on the suspect . . . ." ). Agent Fegan testified that Justice was free to walk in and out of the motel room while officers conducted a search of the room. The officers did not arrest Justice until they discovered the firearms in his room. Until his arrest, Justice was not in the custody of the officers and was merely detained as the object of a lawful stop after having been suspected of committing a traffic violation.

Alternatively, after discovering the drugs following Wagner's exit from Justice's room, coupled with the information provided by Justice's estranged wife, the officers had probable cause to suspect that Justice was engaged in illicit drug activity. Justice's consent is therefore not tainted because his detention was the result of a lawful seizure supported by probable cause.

The fact that Justice was not explicitly advised of his right to refuse consent also does not automatically deem Justice's consent invalid. "While knowledge of the right to refuse consent is one factor to be taken into account, the government need not establish such knowledge as the *sine qua non* of an effective consent." *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973). "Rather it is only by analyzing all the circumstances of an individual consent that it can be ascertained whether in fact it was voluntary or coerced." *Id*. at 233.

Finally, there is no evidence to suggest that Justice merely acquiesced to the officers' claims of authority. As stated above, Justice was fully cooperative with the officers until they discovered the firearms in his motel room and was "cutting it up" with the officers throughout the process. After Wagner exited the motel room, she confirmed to Agent Fegan that the room belonged to Justice. Agent Fegan did not convey to Justice a lawful authority to search his motel room. Instead, Agent Fegan stated to Justice that he believed the officers had sufficient evidence to obtain a search warrant to search the motel room, thus implying that Justice did, in fact, have the right to refuse consent. It is well-settled that an officer's indication that he will obtain a search warrant if a person declines consent to search does not taint the consent. *United States v. Salvo*, 133 F.3d 943, 954 (6th Cir. 1998); *see also United States v. Blanco*, 844 F.2d 344, 351 (6th Cir. 1988).

11

Moreover, the officers had been advised two weeks earlier by Justice's estranged wife that he was in possession of firearms and involved in drug trafficking. Shortly after the officers searched Justice's vehicle and Wagner exited Justice's motel room, the officers discovered marijuana and pills in the vicinity. In viewing the totality of the circumstances, Agent Fegan was not incorrect in assuming that there existed sufficient probable cause to obtain a search warrant. Thus, Agent Fegan's statement that the officers would secure a search warrant if Justice did not consent was not baseless or made with the intent to coerce.

In viewing the evidence in a light most favorable to the government, the district court did not clearly err in determining that Justice's consent to search his motel room was voluntary.

IV.

Accordingly, we affirm the district court's decision.